BOROUGH OF GLASSBORO, ET AL., PLAINTIFFS, v. GLOUCES-
TER COUNTY BOARD OF CHOSEN FREEHOLDERS, NEW
JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION,
KINSLEY LANDFILL, INC., THE CITY OF PHILADELPHIA
AND THE COUNTY OF CAMDEN, DEFENDANTS AND TOWN-
SHIP OF DEPTFORD, DEFENDANT-INTERVENOR.

December 7, 1984.

## DECISION AND ORDER

This matter is before the Court on motions brought by parties primarily seeking relief from provisions of an annexed injunctive order entered by the Superior Court, Law Division. The applications for relief are accompanied by motions for leave to appeal and ancillary applications for consolidation and acceleration. In addition to parties who participated in the original proceedings at the trial level, other parties were permitted to intervene and are before the Court, all seeking virtually identical relief. The Court in the consideration of this matter has reviewed all of the pleadings and evidentiary materials, as well as all of the extensive briefs, submitted to the lower courts and directly to this Court.

The record indicates that in early October 1984, defendant Kinsley Landfill, Inc., a state-regulated landfill operator, notified its customers that the landfill would soon reach the maximum capacity authorized by the permit issued by defendant New Jersey Department of Environmental Protection (Department), at which time the landfill would close. Shortly thereafter, on October 18, 1984, plaintiff Borough of Glassboro (Glassboro) filed a verified complaint in lieu of prerogative writ with an order to show cause, naming as defendants the Gloucester County Board of Chosen Freeholders, the Department and its Commissioner, Kinsley Landfill, Inc., the City of Philadelphia (City), and the County of Camden. Glassboro, which used the Kinsley Landfill to dispose of solid waste generated within its borders, sought to enjoin the closure of the landfill as well as the use of the landfill for disposal of waste generated in the City of Philadelphia (Pennsylvania) and the County of Camden (New Jersey). Thereafter, various parties intervened as plaintiffs, including numerous New Jersey municipalities that also use the Kinsley Landfill to dispose of wastes generated within their communities. Deptford Township, in which the landfill is located, also intervened. Others intervened as defendants, including numerous private waste haulers that ser-

vice municipalities, public entities, and private concerns both within and without New Jersey.

The trial court conducted an evidentiary hearing over several days. On October 26, 1984, it rendered a decision. It found that the Kinsley Landfill was rapidly approaching the end of its useful life and that it would be required to close. While immediate closure would cause irreparable injury to certain plaintiff municipalities, the continued use of the landfill beyond its capacity would cause direct injury to the citizens of Deptford Township. The court further found that a single vertical expansion of the landfill could extend its capacity and that this might be environmentally acceptable. It concluded that the landfill should close, but in an orderly manner. Accordingly, the trial court entered a temporary restraining order forbidding defendants to take any action that would interrupt the use of the Kinsley Landfill until November 13, 1984. The court also ordered that Kinsley submit to the Department complete engineering designs for one sixteen-foot vertical expansion of the landfill. Additionally, the court ordered the Department to review this engineering design to ascertain its effect on the local environment and to formulate a plan for the orderly closure of the Kinsley Landfill, its report to be submitted to the court and all parties by November 9, 1984.

Kinsley presented the court-ordered engineering designs, which the Department determined were environmentally acceptable if certain deficiencies were corrected. The Department also submitted a plan for the orderly closure of the landfill contingent upon court approval of the one-lift expansion.

The Department also emphasized in its report to the court the urgent need for Gloucester, Camden, and Salem Counties to develop new landfill facilities as soon as possible. It noted that while ordinarily it would take at least two years to comply with all the regulatory and environmental requirements relative to siting, implementing, permitting, and preparing a landfill, if extraordinary measures were taken then new landfills could be

operational within twelve months. However, at the current rate of waste flow into Kinsley the landfill would be exhausted in three and one-half months. The one additional lift expansion would extend the longevity of the landfill for the needed one-year period, but this could be accomplished only if the amount of waste flowing to Kinsley were reduced.

In order to effectuate the needed reduction of waste flow, the Department proposed that access to the landfill be permitted only to municipalities in Gloucester County, which surrounds the Kinsley Landfill, and to municipalities in counties that have executed interdistrict agreements with Gloucester County. Under this proposal, both New Jersey and Pennsylvania municipalities would be excluded from Kinsley, although the City of Philadelphia would be the major generator of waste to be denied access to the dump. The Department also suggested that in order to ensure that the Kinsley Landfill has sufficient capacity to meet waste disposal needs until new landfills are opened, all communities using the Kinsley Landfill should be required to maximize their recycling efforts, including the adoption of mandatory recycling ordinances and curbside pick-up.

Based upon the entire evidential record, the trial judge on November 13, 1984, made a determination and issued an Order. Among the findings made by the judge were that the Department had required since 1980 that Camden and Salem Counties, as well as the City of Philadelphia, enter into waste flow agreements with Gloucester County as a condition of continued use of the Kinsley Landfill. Such inter-district waste flow agreements are integral aspects of the solid waste planning process under the Solid Waste Management Act, *N.J.S.A.* 13:1E–1 to –38. In respect of the factual dispute between Gloucester County and the City of Philadelphia, each claiming bad faith on the part of the other, the court found no bad faith by Gloucester County. It further found that the City of Philadelphia had failed to share equally in the efforts of other waste-generating communities to slow the flow of *all* waste

into the Kinsley Landfill and that waste flows into Kinsley Landfill generated within the City of Philadelphia had "continued to escalate at an alarming rate unlike those districts subject to interdistrict agreements." The judge also found that the City of Philadelphia's Commissioner Michaels, the official responsible for municipal waste removal, was a credible witness when he stated that the City could accommodate the closure of Kinsley Landfill.

On November 15, 1984, the City of Philadelphia moved before the trial court seeking reconsideration of the November 13, 1984 Order so as to allow Kinsley Landfill to continue accepting waste generated within the City. The City urged the court to approve an additional vertical expansion. The court denied the City's motion, finding that the testimony of Walter Burshtin, the Department's expert, was more credible than the testimony of the City's expert concerning the feasibility of an additional vertical expansion. A similar subsequent application made by the City was also denied.

Thereafter the City of Philadelphia and several other aggrieved parties brought motions for leave to appeal and for a stay of the trial court order. On November 25, 1984, the Appellate Division denied these motions for leave to appeal and stay. On November 27, 1984, applications for emergency relief under Rule 2:9–8 and motions for leave to appeal and ancillary procedural relief were filed with this Court. On that date, a single justice of the Court granted a partial stay pending consideration by the full Court of the motions for leave to appeal and stay pending such appeal. This emergency relief was granted to the City of Philadelphia and two private haulers, Quick-way, Inc., and Edward Lawrenson, Inc. The order was limited to paragraph three of the trial court's order and authorized the continued disposal at the landfill of wastes delivered by the City in City-owned vehicles, but reduced such waste flow to 1981 levels; waste generated in the City of Philadelphia but transported by private waste haulers was not permitted to be dis-

posed of at Kinsley, unless it was carried by the two private waste hauling companies that had intervened.

Defendants seek a stay of the trial court's order of November 13, 1984, the effect of which is to preclude them from disposing of their solid waste at the Kinsley Landfill. It is important to note that generally they do not challenge other critical provisions of the lower court's order, such as the provision that the Counties of Gloucester, Camden, and Salem immediately embark upon steps to develop new landfills within their respective borders, to achieve this within one year, and to report to the court not later than December 24, 1984; that the landfill be expanded in accordance with the approved engineering design; and that all municipalities in the respective Counties take affirmative steps to improve the removal of waste. It is also to be emphasized that the focus of these proceedings is primarily upon the need for a stay. See Rule 2:9–5 and Rule 2:9–8. In respect of this aspect of the application, because the probabilities of success on appeal constitute one factor influencing our temporary order, we consider, but do not decide, whether appellants' claims may have merit.

The Order that is the subject of these applications must be examined in the light of the critical Statewide concerns relating to solid waste disposal, noted as early as 1974 by this Court in *Southern Ocean Landfill v. Mayor of Ocean Tp.*, 64 *N.J.* 190, 193, and again, eight years later, in *A.A. Mastrangelo, Inc. v. Environmental Protection Dep't.*, 90 *N.J.* 666 (1982). In particular, the Order must be viewed within the framework of *N.J.S.A.* 13:1E–1 to –38, the Solid Waste Management Act. This Act was passed by the Legislature in recognition of the fact that the management of solid waste disposal in New Jersey had consisted largely of haphazard, random, uncoordinated activities undertaken with little, if any, regard for regional planning and coordination. *N.J.S.A.* 13:1E–2a. In order to protect the public health, safety, and welfare, the Act establishes the policy of New Jersey to provide a coordinated approach to solid waste disposal by establishing 22 solid waste manage-

ment districts (consisting of 21 counties and the Hackensack Meadowlands district), each of which is charged with the responsibility of developing and implementing comprehensive solid waste management plans that meet solid waste disposal needs. *N.J.S.A.* 13:1E–2b(2).

The trial court found upon an ample evidential record that the State and Gloucester County and its residents are faced with a crisis, a veritable "doomsday of trash disposal." The court then carefully adduced and balanced the evidence presented and considered all relevant positions in order to develop a plan for the orderly closure of the landfill that would provide the least burden to all involved. Thus, the court determined to allow the landfill to remain open for a temporary period pending implementation of alternatives. It limited disposal at the landfill of allowable waste to an amount that would permit the achievement of these objectives. It did so by permitting the continued use of the landfill only by those communities where waste flow to Kinsley was subject to interdistrict agreements, by those that would also face abrupt, irreparable injury if the landfill were closed, and, significantly, by those that would also be made subject to the additional requirement that they implement stringent recycling programs designed to ameliorate the waste removal crisis.

The trial court determined to exclude waste generated within the City of Philadelphia, as well as other communities within and without New Jersey, where waste flow was not subject to an interdistrict agreement with Gloucester County. The Solid Waste Management Act contemplates that when solid waste is transported into a solid waste management district it must be pursuant to an interdistrict agreement. *N.J.S.A.* 13:1E–21b(3). According to the Department, a district cannot effectively plan for the solid waste disposal facilities that are needed to meet waste disposal needs unless it knows how much waste will be entering the district from various sources. While an out-of-state waste generator cannot be compelled to enter into such an agreement, it is entirely reasonable to authorize such genera-

tors to enter into appropriate contractual arrangements that will serve to further comprehensive planning and regulation.

The City of Philadelphia contends that the injunctive order of the trial court itself constitutes a violation of the Commerce Clause. *See U.S. Const.* Art. I, § 8, cl. 3. We do not resolve this contention on the merits. We consider the probability that a constitutional violation will be found on a plenary review of the merits as one factor in determining whether application for a stay pending such appeal should be considered more sympathetically.

The Supreme Court, in defining the limits imposed by the Commerce Clause, has attempted to reconcile the conflict between State regulations designed to further legitimate local interests, such as the safe disposal of solid waste, and the unavoidable burden that such regulatory efforts may have upon interstate commerce. *See Sporhase v. Nebraska ex rel. Douglas,* 458 *U.S.* 941, 956–57, 102 *S.Ct.* 3456, 3464–65, 73 *L.Ed.*2d 1254 (1982); *City of Philadelphia v. New Jersey,* 437 *U.S.* 617, 623–24, 98 *S.Ct.* 2531, 2535, 57 *L.Ed.*2d 475 (1978). If the State regulation purporting to promote environmental purposes is in reality "simple economic protectionism," the Supreme Court has applied a "virtually *per se* rule of invalidity." *Minnesota v. Clover Leaf Creamery Co.,* 449 *U.S.* 456, 471, 101 *S.Ct.* 715, 727, 66 *L.Ed.*2d 659 (1981); *City of Philadelphia v. New Jersey, supra,* 437 *U.S.* at 624, 98 *S.Ct.* at 2535, 57 *L.Ed.*2d at 481. However, if the challenged state regulation is not otherwise patently discriminatory, it should be sustained if it effectuates legitimate local public interests and imposes essentially an incidental burden on interstate commerce that is not excessive in relation to the local interest served. *Pike v. Bruce Church, Inc.,* 397 *U.S.* 137, 142, 90 *S.Ct.* 844, 847, 25 *L.Ed.*2d 174 (1970); *City of Philadelphia v. New Jersey, supra,* 437 *U.S.* at 624, 98 *S.Ct.* at 2535, 57 *L.Ed.*2d at 482.

In this case, unlike the situation in *City of Philadelphia,* there is no state action in the form of a statute that itself imposed a total and absolute ban on out-of-state waste solely

because of its origin. Here, a trial court was confronted with an immediate—not a long-range—crisis and was required to respond with prompt solutions to avoid critical adverse consequences. The trial court's order in this context endeavored to effectuate a balanced and fair regulatory approach that was not in purpose or effect discriminatorily focused against interstate commerce as such. In addition, the court order attempts to effectuate the regulatory scheme of the Solid Waste Management Act, the planning provisions of which serve a legitimate local interest. Clearly the State of New Jersey has an interest in endeavoring to protect the public health, safety, and welfare by establishing a scheme intended to provide for regional planning and coordination of solid waste disposal. See *N.J.S.A.* 13:1E–2.

Further, it does not appear that the structured Order in this case is violative of national concerns insofar as these are implicated by the Commerce Clause. Congress itself has recognized the need for the development of comprehensive state plans for solid waste disposal and implicitly this requires the planned management of waste flow. *See* Resource Conservation and Recovery Act of 1976, 42 *U.S.C.A.* §§ 6901–6987. Congress has there expressed a strong policy preference for resource recovery. *See* 42 *U.S.C.A.* § 6941. Resource recovery cannot be accomplished if waste streams are not directed. *See Central Iowa Refuse Systems, Inc. v. Des Moines Metro. Solid Waste,* 715 *F.*2d 419 (8th Cir.1983) (restraint on waste flows essential to development of comprehensive waste flow plan). The court order here recognizes local responsibilities in this area, responsibilities that clearly require integrated planning. *See A.A. Mastrangelo, Inc. v. Environmental Protection Dep't, supra,* 90 *N.J.* 666 (two state agencies have concurrent responsibilities to direct the interdistrict flow of waste); *In re Application of Combustion Equipment Associates,* 169 *N.J.Super.* 305 (App.Div.1979).

In addition, on the record before us it appears that the burden on interstate commerce is not excessive in relation to

these local interests. Based upon the testimony and other evidence presented, the trial court concluded that the City of Philadelphia would suffer no irreparable injury. As noted, the City's Commissioner of Streets testified that the City can accommodate the closure of the landfill and that the City does have alternatives to Kinsley Landfill. It does not appear that any asserted hardship to the City will be intolerably excessive notwithstanding additional evidence, subsequently offered by the City, suggesting greater hardship than originally portrayed.

The City of Philadelphia also argues that New Jersey's legitimate local interest could be promoted in a manner that has a lesser impact on interstate commerce. Specifically, the City suggests that the court should. allow an additional vertical expansion of the landfill by yet another lift. The trial court heard and considered the testimony and affidavit presented by the City's expert concerning the safety and feasibility of such an expansion but concluded that this evidence was not more persuasive than that offered by the Department's expert. To the extent these contentions raise issues relating to whether the trial court's determination was reversible as against the weight of the evidence or as being arbitrary or capricious, in addition to the issue of constitutionality, we do not now foresee in any clear or definitive way the City prevailing on the merits in a plenary appeal.

Accordingly, the emergency order heretofore entered is hereby vacated and the motions for a stay of the order of the trial court of November 13, 1984 are hereby denied.

We further determine that the applicants are entitled to a plenary appeal on the merits of their contentions. Therefore, we grant their motions for leave to appeal and summarily remand the appeal to the Appellate Division for disposition on the merits, and further direct that the appeal be accelerated. In addition, since the trial court in its order of November 13, 1984, authorized the parties to seek modification or dissolution of its order and retained jurisdiction, we direct the Appellate

Division to continue limited jurisdiction in the trial court for such purpose, subject to appellate supervision. See Rule 2:9–1.

So Ordered.

## APPENDIX

BOROUGH OF GLASSBORO, a municipal corporation of the State of New Jersey, Plaintiff,

v.

GLOUCESTER COUNTY BOARD OF CHOSEN FREEHOLDERS, et al., Defendant.

Superior Court of New Jersey,

Law Division,

Gloucester County.

Docket No. L–070476–84 PW.

Nov. 13, 1984.

CIVIL ACTION ORDER FOR
PRELIMINARY INJUNCTION

This matter having been opened to the Court by Joseph F. Lisa, Esq., attorney for Plaintiff Borough of Glassboro, and in the presence of counsel for the various parties to this case, and this matter having been heard by the Honorable Samuel G. DeSimone on October 19, 23, 24, 25, 26 and November 13, 1984, and the Court having heard the testimony of the various witnesses, having reviewed the various exhibits, affidavits and briefs submitted by counsel and having heard the arguments of counsel, and it appearing to the Court that there is an immediate threat of irreparable injury if the temporary restraints entered by this Court on October 26, 1984, are not converted into a preliminary injunction with the modifications herein set forth, and for the reasons set forth by the Court in its oral Opinion on November 13, 1984, and for good cause shown;

It is on this 13th day of November, 1984 ORDERED

1) that defendants are restrained from taking any action which would prevent the continued uninterrupted use of Kinsley Landfill in accordance with the terms of this Order. ·

2) The Counties of Camden, Gloucester and Salem shall proceed immediately with implementation of one or more landfills within their borders, with such landfills to become operational within 12 months of the date hereof in accordance with Exhibits B and C attached hereto with respect to Camden and Gloucester Counties, and with respect to Salem County, in accordance with a schedule to be filed with the Court.

3) Not later than November 27, 1984, at 4:00 P.M., Kinsley Landfill shall cease accepting all solid waste generated within the City of Philadelphia and other Pennsylvania communities, and shall cease accepting other out-of-district solid waste not subject to interdistrict agreements.

4) Not later than November 27, 1984, all municipalities within the borders of Camden, Gloucester and Salem using the Kinsley Landfill shall maximize their recycling efforts, including curbside pickup, mandatory ordinances, stepped up public awareness campaigns, and increased enforcement efforts, and shall report to the Court and the DEP within such time.

5) Except as provided in paragraph number 3 above, all wastes presently disposed of at the Kinsley Landfill will be disposed of at the vertical expansion to the Kinsley Landfill until it reaches capacity, at which time said wastes are redirected to the new landfills to be implemented in the Counties of Camden, Gloucester and Salem.

6) Disposal of sewage sludge at Kinsley Landfill shall cease on March 15, 1985.

7) Kinsley landfill may implement a vertical expansion for one additional lift of compacted solid waste to be conducted in accordance with the engineering design submitted by Kinsley

and in accordance with the report submitted to the Court by DEP.

8) The Counties of Salem, Gloucester and Camden shall report to the Court not later than December 24, 1984, on the status of site selection for county landfills.

9) The Township of Deptford shall issue the building permits necessary for the vertical expansion of Kinsley landfill.

10) Any provision of this Order may be modified or dissolved by application of any party on one-day notice to all other parties.

11) This Court retains jurisdiction.

12) The motion of the City of Philadelphia to stay this order pending appeal is denied.

/s/_____

Samuel G. De Simone, A.J.S.C.