214 N.J. Super. 247 (1986)
518 A.2d 1105
IN THE MATTER OF CERTAIN AMENDMENTS TO THE ADOPTED AND APPROVED SOLID WASTE MANAGEMENT PLAN OF THE CAMDEN COUNTY SOLID WASTE MANAGEMENT DISTRICT.
Superior Court of New Jersey, Appellate Division.
Submitted November 12, 1986.
Decided December 10, 1986.
*248 Before Judges PRESSLER, GAULKIN and BAIME.
John A. Yacovelle, attorney for appellants.
W. Cary Edwards, Attorney General of New Jersey, attorney for respondents (Michael R. Clancy, Deputy Attorney General, of counsel; Paul H. Schneider, Deputy Attorney General, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This is an appeal by 23 municipalities challenging the validity of an emergency order issued by the Department of Environmental Protection (DEP) and the Board of Public Utilities (BPU) redirecting Camden County's solid waste flows from the now closed Kinsley landfill in Gloucester County to a transfer station operated by the Forge, Inc. in Philadelphia, Pennsylvania. Appellants contend that the emergency order transcends the territorial jurisdiction of the DEP and the BPU and, in any event, is ultra vires because the agencies failed to adhere to the requisites of the Administrative Procedure Act (N.J.S.A. 52:14B-1 et seq.) and the applicable Administrative Code provisions.
We need not recite the facts at length. Suffice it to say, the joint action of the DEP and the BPU came in the wake of protracted litigation resulting in a court order directing the phased closure of the Kinsley landfill. See Glassboro v. Gloucester Cty. Bd. of Chosen Freeholders, 98 N.J. 186 (1984), on *249 remand, 199 N.J. Super. 91 (App.Div. 1985), aff'd, 100 N.J. 134 (1985), cert. den. ___ U.S. ___, 106 S.Ct. 532, 88 L.Ed.2d 464 (1985). Virtually all the solid waste generated within New Jersey which was deposited at that landfill emanated from Gloucester, Camden and Salem Counties. Since the Kinsley landfill had reached its maximum capacity, the court's order directed those counties to develop new solid waste disposal facilities as soon as possible.
In response, the Camden County Solid Waste Advisory Council retained a consultant to assist it in locating potential sites for new landfills. Several sites were investigated but none was found to be environmentally acceptable. Inquiries to other New Jersey districts concerning the possibility of utilizing out-of-county facilities proved unavailing.
Ultimately, the Camden County Board of Chosen Freeholders entered into negotiations with the Forge, Inc., which, as we have noted, operates a disposal facility in Philadelphia. Following public hearings, the Board approved an amendment to the county's solid waste management plan redirecting waste flows formerly deposited in the Kinsley landfill to the Forge, Inc. The amendment was then presented to the DEP which submitted it to various state review agencies for comment.
On November 25, 1985 the Commissioner of the DEP certified the amendment with certain minor alterations. The certification directs that various types of solid waste are to be transported to the transfer station operated by the Forge, Inc. A landfill located in Winslow Township is to be used as a back-up solid waste facility subject to the county's obtaining waivers of strict compliance from the New Jersey Pinelands Commission. In the certification, the Commissioner emphasized that the redirection of solid waste to these facilities was not intended to be a permanent solution to Camden County's problem. Rather, the redirection of Camden County's solid waste is said to be a temporary emergency measure which is to terminate at the end of a three and one-half year period. *250 During this period, Camden County is obliged to consider other sites and adopt a new sold waste management plan. Under the certification, the approved amendment was to take effect on December 1, 1985.
On the date that the Commissioner issued his certification of the plan amendment, he sent a memorandum to the President of the BPU informing her of the problems confronting Camden County and requesting that she approve an emergency redirection order. Pursuant to his request, the redirection order was approved by the BPU on December 27, 1985. This appeal followed.

I
Initially, we reject appellants' argument that the emergency redirection order and the amendment to the solid waste management plan are invalid because they exceed the territorial jurisdiction of the DEP and the BPU. Stripped to its essentials, appellants' contention is premised upon the thesis that the Solid Waste Management Act (Act) (N.J.S.A. 13:1E-1 et seq.) requires that all waste generated in New Jersey be disposed of in this state. Appellants cite no specific authority supporting this proposition and we find none. Although the Act does not expressly authorize out-of-state disposal of solid wastes, we are firmly convinced that such power can be reasonably implied from a fair reading of the statutory language.
The Solid Waste Management Act is described in great detail in A.A. Mastrangelo, Inc. v. Environmental Protec. Dep't, 90 N.J. 666 (1982), and it would be superfluous for us to engage in an extensive discussion of its provisions here. We merely observe that the Act represents a comprehensive statement by the Legislature which provides "a framework for the coordination of solid waste collection, disposal, and utilization activity in New Jersey." Id. at 672. The Act "sets forth a structured scheme for the integration of solid waste management planning at local, regional and state levels." Ibid. The principal articulated *251 objective of the statutory scheme is to promote the "health, safety and welfare of the people of this State [through] efficient and reasonable solid waste collection and disposal service or [through the] efficient utilization of such waste." N.J.S.A. 13:1E-2a.
In our view, the authority of the DEP and the BPU to redirect solid waste flow from a New Jersey landfill that has reached its maximum capacity to an out-of-state facility is reasonably incidental to the ability of these agencies to effectuate fully the legislative intent underlying the Act. See A.A. Mastrangelo, Inc. v. Environmental Protec. Dep't, supra, 90 N.J. at 683. In New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544 (1978), our Supreme Court addressed a factual complex somewhat similar to that here in that the statutory authority for an administrative agency action was not expressly stated in the enabling legislation, yet the action furthered the policies and findings upon which the statutory scheme rested. The Court stated that "[t]he authority possessed by an administrative agency `consists of the powers expressly granted which in turn are attended by those incidental powers which are reasonably necessary or appropriate to effectuate the specific delegation.'" Id. at 562, quoting In re Regulation F-22, Office of Milk Industry, New Jersey, 32 N.J. 258, 261 (1960). The Court went on to note that "the grant of authority to an administrative agency is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities and ... the [judiciary] should readily imply such incidental powers as are necessary to effectuate fully the legislative intent." New Jersey Guild of Hearing Aid Dispensers v. Long, supra, 75 N.J. at 562. See also In re Suspension of Heller, 73 N.J. 292, 303 (1977); Cammarata v. Essex County Park Comm'n, 26 N.J. 404, 411 (1958); Lane v. Holderman, 23 N.J. 304, 315 (1957). More recently, in A.A. Mastrangelo, Inc. v. Environmental Protec. Dep't, supra, the Court reiterated these principles in reference to the Solid Waste Management Act and stated that "the absence of an express *252 statutory authorization in the enabling legislation will not preclude administrative agency action where, by reasonable implication, that action can be said to promote or advance the policies and findings that served as the driving force for the enactment of the legislation." 90 N.J. at 683-684.
Against this backdrop, we note that the action of the DEP and the BPU redirecting the disposal of solid waste from a New Jersey landfill to an out-of-state facility is hardly novel. We note that other counties have long been permitted by the DEP and the BPU to utilize out-of-state disposal facilities. Of course, we are in no way bound by the agencies' interpretation of their authority under the statute. See Service Armament Co. v. Hyland, 70 N.J. 550, 561-562 (1976). We are nevertheless obliged to accord it substantial deference particularly where, as here, such interpretation plainly advances the statutory goals and objectives. Pringle v. N.J. Dep't of Civil Service, 45 N.J. 329, 333 (1965); Lloyd v. Vermeulen, 22 N.J. 200, 210 (1956); State Dep't of Civil Service v. Clark, 15 N.J. 334, 341 (1954).
We recognize the fundamental principle that the authority of every administrative agency "is necessarily restricted by the territorial limits of the state in which it is established." Penna. R. Co. v. Bd. of Public Utility Commissioners, 11 N.J. 43, 49 (1952). See also Erie R.R. Co. v. State, 51 N.J. Super. 61, 65 (App.Div. 1958). However, "the rule of territorial limitation is not so sweeping that a state cannot through a regularly established tribunal regulate ... intrastate operations...." Penna R. Co. v. Bd. of Public Utility Commissioners, supra, 11 N.J. at 49. We emphasize that the redirection order and the amendment to the solid waste management plan do not purport to regulate activities beyond state borders. Nor do they have that effect. They merely permit redirection of waste flows from an exhausted and thus environmentally unsound New Jersey landfill to an out-of-state facility which is not similarly burdened. *253 We perceive no sound basis to disturb the agencies' exercise of the authority conferred upon them by the statutory scheme.[1]

II
We next turn to appellants' argument that the redirection order and the amendment to the Camden County solid waste management plan are invalid because the DEP and the BPU failed to comply with the requisites of the Administrative Procedure Act and the applicable provisions of the Administrative Code.
A brief discussion of the Solid Waste Management Act and the regulations promulgated by the DEP is necessary for an understanding of the issues presented. As we have noted, the Act calls for the integration of solid waste management planning at all levels of government. However, the DEP is given the central planning role and is required to formulate, promulgate and review biennially a state-wide solid waste management plan. N.J.S.A. 13:1E-6(a)(3). Each of the 22 districts[2] is then required to adopt its own districtwide plan, N.J.S.A. 13:1E-20 and 21, which is to be submitted to the Commissioner who in turn is required to forward it to various state agencies, including the BPU, for their review. N.J.S.A. 13:1E-24. The Commissioner thereafter must either approve, reject or modify *254 the district plan. N.J.S.A. 13:1E-24b. Often, interdistrict flow of solid waste is necessary. In such cases, the county plans must so specify. Once approved by the Commissioner, the direction of waste flows are codified in the Administrative Code, N.J.A.C. 7:26-6.5, after being adopted pursuant to the Administrative Procedure Act. BPU approval is also necessary. N.J.S.A. 13:1E-24 and N.J.A.C. 7:26-6.1.
N.J.A.C. 7:26-6.6 sets forth the procedure for modifying waste flow direction by amending the district's solid waste management plan. That section provides as follows:
(a) This section shall govern the procedures to be followed in the event that a Board of Chosen Freeholders or the Hackensack Commission adopts a plan amendment, in accordance with N.J.S.A. 13:1E-23, which provides for the modification of existing waste flows.
(b) Upon a determination by the Department that such a plan amendment is complete and acceptable for review, which determination shall be made within 30 days of receipt by the Department, the Department shall forward a copy of that amendment to the Board of Public Utilities (Board).
1. Amendments found not acceptable shall be returned to the district, with explanation of the reasons for such determination.
(c) The Department and the Board shall, after notice pursuant to N.J.S.A. 52:14B-4 and N.J.A.C. 1:30, conduct a public hearing at least 15 days following publication of the proposed waste flow modification in the New Jersey Register.
(d) Within 30 days after the public hearing, the Board shall submit its recommendations to the Department on the proposed waste flow modification.
(e) The Department may, concurrent with, or following approval by the Commissioner of the relevant portions of the plan amendment, adopt the proposed waste flow modification pursuant to N.J.S.A. 52:14B-1 et seq. and N.J.A.C. 1:30.
Obviously, adoption of a plan amendment to reflect a needed change in waste flow direction can be extremely time consuming. However, emergencies can arise, in which case N.J.A.C. 7:26-6.7 provides an expedited procedure to be followed. That section states:
(a) Upon a determination by the Department that an emergency condition, including but not limited to the unanticipated closure of a disposal facility or restricted access thereto, requires the redirection of waste flows, the Department may, after approval by the Board, order such redirection.
(b) The Department shall, within 20 days of such redirection, determine the likely duration of the redirection.

*255 1. If the expected duration is 90 days or less, the Department's redirection shall remain in effect.
2. If the expected duration is greater than 90 days but not more than 180 days, the Department and the Board shall, by public notice, request written comment for a 30-day period. The Department and the Board may modify such waste flow redirections on the basis of comments received.
3. If the expected duration is greater than 180 days, the Department shall order the affected districts to submit a plan amendment which provides for the modification of existing waste flows.
We are entirely satisfied from our reading of the record that the phased closure of the Kinsley landfill presented a substantial emergency requiring immediate redirection of Camden County's solid waste flow. We are also convinced that the DEP and the BPU properly adhered to the provisions of N.J.A.C. 7:26-6.7 in issuing the emergency redirection order. We note, however, that the "expected duration" of the "emergency condition" is greater than 180 days and thus it is necessary that a "plan amendment" be adopted providing for the "modification of existing waste flows." N.J.A.C. 7:26-6.7(b)(3). Therefore, it was and is incumbent upon the interested agencies to comply with all the procedural requisites set forth in N.J.A.C. 7:26-6.6.
The Attorney General concedes as much in his brief and states that the DEP and the BPU are presently "proceed[ing] to formally amend [Camden County's] waste flow" plan. Unfortunately, there is considerable confusion in the record regarding the extent to which the provisions of N.J.A.C. 7:26-6.6 have been adhered to thus far. We emphasize that N.J.A.C. 7:26-6.6 provides detailed procedures which must be complied with in order to amend the district's solid waste management plan. We also stress the necessity of adhering to the applicable provisions of the Administrative Procedure Act. N.J.A.C. 7:26-6.6 (c) and (e).
Consistent with the foregoing, this matter is remanded to the DEP and the BPU with the direction that they fully comply with the procedural requisites of N.J.A.C. 7:26-6.6. Of course, the emergency redirection order issued pursuant to N.J.A.C. 7:26-6.7 shall remain in effect. Accordingly, the matter is *256 remanded to the DEP and the BPU for further proceedings in accordance with this opinion. We do not retain jurisdiction.
NOTES
[1] We question whether appellants' strained construction of the Solid Waste Management Act would withstand scrutiny under the commerce clause of the United States Constitution. In Philadelphia v. New Jersey, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978), the United States Supreme Court invalidated a New Jersey statute which posed a blanket prohibition on the importation of out-of-state waste. In reaching this conclusion, the Court held that the transport of waste across state lines is commerce within the strictures of the Constitution. Ibid. While the interpretation of the Act suggested by appellants presents the converse situation, the same constitutional analysis may well preclude the prohibition against the transport of solid waste flows to facilities in another state. In light of our decision, it is unnecessary for us to address that question.
[2] The 21 counties and the Hackensack Meadowlands Development Commission comprise the 22 districts.