258 N.J. Super. 290 (1992)
609 A.2d 501
IN THE MATTER OF CERTAIN AMENDMENTS TO THE ADOPTED AND APPROVED SOLID WASTE MANAGEMENT PLAN OF THE HUDSON COUNTY SOLID WASTE MANAGEMENT DISTRICT CERTIFIED BY THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION ON JANUARY 14, 1991. IN RE NEW JERSEY BOARD OF PUBLIC UTILITIES AND NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION EMERGENCY REDIRECTION OF SOLID WASTE FLOWS DATED FEBRUARY 1, 1991.
Superior Court of New Jersey, Appellate Division.
Argued February 4, 1992.
Decided July 6, 1992.
*291 Before Judges PRESSLER, SKILLMAN and D'ANNUNZIO.
Stephen H. Skoller argued the cause for appellant Prolerized Schiabo Neu (Lowenstein, Sandler, Kohl, Fisher & Boylan, attorneys; Michael L. Rodburg, of counsel; David A. Thomas, Fern F. Daves, Michael L. Rodburg and Stephen H. Skoller, on the brief).
James M. Hirschhorn argued the cause for respondent Hudson County Improvement Authority (Sills, Cummis, Zuckerman, *292 Radin, Tischman, Epstein & Gross, attorneys; James M. Hirschhorn, of counsel and on the brief).
Susan J. Vercheak, Deputy Attorney General, argued the cause for respondents Department of Environmental Protection and Board of Public Utilities (Robert J. Del Tufo, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Carla Vivian Bello, Senior Deputy Attorney General, on the brief).
Robert J. Del Tufo, Attorney General, attorney for respondent Hackensack Meadowlands Development Commission (George N. Cohen, Deputy Attorney General, on the brief).
Robert E. Barry, Hudson County Counsel, attorney for respondent County of Hudson (Kathleen M. Grant, Assistant County Counsel, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
The issue presented by this appeal is whether the emergency adoption of a solid waste flow redirection order must conform with the emergency rulemaking procedures of the Administrative Procedure Act.
The issue arises out of a series of administrative actions relating to the planned closure of Landfill I-E operated by the Hackensack Meadowlands Development Commission (HMDC), which formerly was the disposal site for all Hudson County solid waste. On December 22, 1989, the Department of Environmental Protection (DEP)[1] and Board of Public Utilities (BPU) jointly issued an order requiring closure of Landfill I-E *293 by December 31, 1990. Hudson County filed a notice of appeal from this administrative order. Subsequently, Hudson County, the DEP, BPU, HMDC and Hudson County Improvement Authority (HCIA) entered into a settlement agreement providing for the continued operation of Landfill I-E pending Hudson County's development of an alternative disposal plan. The settlement agreement fixed the capacity limit for the I-E Landfill and required Hudson County to submit an amendment to its Solid Waste Management Plan (Plan) that identified a short term disposal strategy for the remaining life of the landfill. The agreement also provided that Hudson County would "investigate means to decrease the waste flow presently going into [the facility]."
The parties then initiated a number of administrative actions to formalize and implement the terms of the settlement agreement. Hudson County submitted an amendment of its Plan to the DEP, dated September 27, 1990, which provided among other things that waste other than municipal waste, i.e., household and ordinary commercial waste, would be required to be brought to the HMDC baler facility for processing and shipment to an out-of-state landfill. In addition, the HCIA petitioned the BPU for an exclusive franchise encompassing all types 10, 13, 23, 25 and 27 solid waste, a waste flow redirection order and approval of its initial tariff.
On January 24, 1991, the DEP certified, with modifications not material to this appeal, Hudson County's amendment of its Plan. On February 4, 1991, the BPU awarded the HCIA a franchise for the disposal of types 10, 13, 23, 25 and 27 solid waste, except recyclables, and approved HCIA's initial rates and tariffs. The DEP and BPU also jointly issued an emergency waste flow redirection order pursuant to N.J.A.C. 7:26-6.7, which provided among other things that all waste collectors and waste facility operators were required, effective February 4, 1991, to bring all waste, except for municipal and certain asbestos waste, to the HMDC baler for processing and shipment out-of-state. The emergency redirection order further *294 provided that its duration would be "greater than 180 days" but that the DEP and BPU "will initiate formal rulemaking procedures to embody the above waste flow directive formally within N.J.S.A. 7:26-6.1 et seq." However, we were advised at oral argument that the DEP and BPU still have not proposed the adoption of a permanent rule relating to the redirection of solid waste generated in Hudson County.
Prolerized Schiabo Neu (PSN), which operates an automobile recycling plant in Jersey City, filed separate notices of appeal, which were subsequently consolidated, challenging DEP's certification of Hudson County's amendment to its Plan and the joint DEP/BPU emergency waste flow redirection order.
PSN argues that the emergency redirection order is invalid because the DEP and BPU failed to comply with the provision[s] of the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15, governing emergency rulemaking. PSN argues, in the alternative, that the DEP and BPU failed to comply with their own regulation governing emergency rulemaking. PSN also argues that the DEP's certification of Hudson County's amendment to its Plan, insofar as it requires PSN to bring the residue from its recycling operation to a transfer station for shipment out-of-state, is arbitrary, capricious and unreasonable, and violates the Commerce Clause of the United States Constitution.
We conclude that the emergency redirection order must be invalidated because the DEP and BPU violated the emergency rulemaking requirements of the APA. This conclusion makes it unnecessary for us to consider PSN's arguments relating to the DEP's certification of Hudson County's amendment to its Plan.

I
The requirement that any order governing the place of disposal of solid waste must be jointly issued by the DEP and BPU derives from the Court's decision in A.A. Mastrangelo, Inc. v. Commissioner of the Dept. of Envtl. Protection, 90 *295 N.J. 666, 449 A.2d 516 (1982), which concluded that the DEP and BPU possess overlapping authority under the Solid Waste Management Act (SWMA), N.J.S.A. 13:1E-1 to -48, and Solid Waste Utility Control Act, N.J.S.A. 48:13A-1 to -13, to regulate the flow of solid waste.
In response to Mastrangelo, the DEP and BPU adopted regulations providing for the joint adoption by the DEP and BPU of waste flow orders governing the place of disposal of solid waste. 14 N.J.R. 1368(a) (December 6, 1982). N.J.A.C. 7:26-6.6 provides in relevant part:
(b) Upon a determination by [the DEP] that a plan amendment [which provides for the modification of existing waste flows] is complete and acceptable for review, [the DEP] shall forward a copy of that amendment to the [BPU].
....
(c) The [DEP and BPU] shall, after notice pursuant to N.J.S.A. 52:14B-4 and N.J.A.C. 1:30, conduct a public hearing at least 15 days following publication of the proposed waste flow modification in the New Jersey Register.
(d) Within 30 days after the public hearing, the [BPU] shall submit its recommendations to the [DEP] on the proposed waste flow modification.
(e) The [DEP] may, concurrent with, or following approval by the Commissioner [of DEP] of the relevant portions of the plan amendment, adopt the proposed waste flow modification pursuant to N.J.S.A. 52:14B-1 et seq. and N.J.A.C. 1:30.
In addition, the DEP and BPU adopted N.J.A.C. 7:26-6.7, the regulation challenged in this appeal, which provides in relevant part that:
(a) Upon a determination by the [DEP] that an emergency condition, including but not limited to the unanticipated closure of a disposal facility or restricted access thereto, requires the redirection of waste flows, the [DEP] may, after approval by the [BPU], order such redirection.
(b) The [DEP] shall, within 20 days of such redirection, determine the likely duration of the redirection.
....
3. If the expected duration is greater than 180 days, the [DEP] shall order the affected districts to submit a plan amendment which provides for the modification of existing waste flows.
The adoption of an order for the redirection of the flow of solid waste constitutes rulemaking within the intent of the *296 APA. The characteristics of an administrative rulemaking are that it
(1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. [Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 331-32, 478 A.2d 742 (1984)].
A waste flow redirection order has all of these features of an administrative rule. It applies to a large regulated class involved in solid waste generation, collection and disposal, applies generally and uniformly to classes of solid waste generators, collectors and disposal sites, operates prospectively only, prescribes rules for waste disposal that are not expressly provided or clearly inferable in the SWMA, constitutes a material and significant change of past agency policy, and reflects a decision on solid waste regulatory policy. Indeed, the DEP and BPU implicitly acknowledged that waste flow orders are administrative rules by providing in N.J.A.C. 7:26-6.6 that the agencies must follow the notice requirements of N.J.S.A. 52:14B-4 before modifying an existing waste flow order and by adopting waste flow orders as administrative rules which are published in N.J.A.C. 7:26-6.5.
Under the APA, a state agency ordinarily must give at least 30 days' notice of the proposed adoption, amendment or repeal of a rule by publication in the New Jersey Register, filing with the President of the Senate and Speaker of the General Assembly and giving direct notice to interested parties. N.J.S.A. 52:14B-4(a)(1). All interested parties must be given a "reasonable opportunity to submit data, views, or arguments, orally or in writing." N.J.S.A. 52:14B-4(a)(3). In addition, upon the request of a legislative committee or governmental agency or *297 subdivision, the agency proposing a rule must conduct a public hearing. Ibid. The agency also must "[p]repare for public distribution a report listing all parties offering written or oral submissions concerning the rule, summarizing the content of the submissions and providing the agency's response to the data, views and arguments contained in the submissions." N.J.S.A. 52:14B-4(a)(4).
N.J.S.A. 52:14B-4(c) establishes a limited exception to these procedural requirements when an agency is confronted with an "imminent peril" which requires the adoption of a rule before normal rule-making procedures can be completed:
If an agency finds that an imminent peril to the public health, safety, or welfare requires adoption of a rule upon fewer than 30 days' notice and states in writing its reasons for that finding, and the Governor concurs in writing that an imminent peril exists, it may proceed without prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable, to adopt the rule. The rule shall be effective for a period of not more than 60 days unless each House of the Legislature passes a resolution concurring in its extension for a period of not more than 60 additional days. The rule shall not be effective for more than 120 days unless repromulgated in accordance with normal rule-making procedures.
See also N.J.A.C. 1:30-4.5, which sets forth the procedures a state agency must follow in adopting an emergency rule.
The present version of N.J.S.A. 52:14B-4(c) reflects a substantial revision made by the 1981 amendments to the APA. L. 1981, c. 27, § 11. Prior to those revisions, a state agency could engage in "emergency rule-making" without any prior review or approval by any other agency, and a rule adopted pursuant to this procedure could remain in effect indefinitely. A 1977 report of legislative committee criticized this feature of the APA, concluding that "invocation of imminent peril as currently constructed tends to undermine public confidence in the governmental process." Legislative Oversight Committee of the New Jersey General Assembly, 197th Leg., 2d Sess., Eye on the Executive 51 (1977). The Legislature responded to this criticism by enacting N.J.S.A. 52:14B-4(c), which requires a state agency to obtain the Governor's concurrence in its declaration of "imminent peril" and limits the effective period of an emergency *298 rule to not more than 60 days or, with the concurrence of both houses of the Legislature, not more than 120 days.
Despite the 1981 amendment of N.J.S.A. 52:14B-4(c), the DEP and BPU adopted N.J.A.C. 7:26-6.7 in 1982, which purportedly authorizes the DEP, with the BPU's approval, to adopt emergency solid waste flow orders without the concurrence of the Governor and provides that such orders may remain in effect for an indefinite period of time. However, there is nothing in the APA, the SWMA, the Solid Waste Utility Control Act, or the Court's decision in Mastrangelo, which even suggests that waste flow redirection orders are exempt from the emergency rulemaking procedures set forth in N.J.S.A. 52:14B-4(c). Therefore, N.J.A.C. 7:26-6.7 conflicts with N.J.S.A. 52:14B-4(c).
Respondents argue that we sustained the validity of emergency redirection orders adopted pursuant to N.J.A.C. 7:26-6.7 in In re N.J. Bd. of Pub. Utils., 200 N.J. Super. 544, 491 A.2d 1295 (App.Div. 1985); In re Camden County Solid Waste Management Dist., 214 N.J. Super. 247, 518 A.2d 1105 (App.Div. 1986) and In re Fiorillo Bros. of N.J., Inc., 242 N.J. Super. 667, 577 A.2d 1316 (App.Div.), certif. denied, 122 N.J. 363, 585 A.2d 371 (1990). However, no argument was made in any of those appeals that N.J.A.C. 7:26-6.7 conflicts with N.J.S.A. 52:14B-4(c), and thus we had no occasion to consider the issue. But now that the issue has been directly raised in this appeal, it is patent that N.J.A.C. 7:26-6.7 conflicts with N.J.S.A. 52:14B-4(c) and must be declared invalid.
Since the emergency waste flow redirection order challenged on this appeal was adopted pursuant to N.J.A.C. 7:26-6.7, without compliance with the procedural requirements of N.J.S.A. 52:14B-4(c), it also must be invalidated. We reject the HCIA's argument that PSN's opportunity to comment upon Hudson County's proposed Plan amendment and intervene in the BPU rate case eliminated the need for the DEP and BPU to adopt a joint redirection order in conformity with the APA. *299 The requirements of gubernatorial concurrence with any emergency rule and the short time limits upon its effectiveness are so fundamental that administrative action which violates these requirements may not be found to be in "substantial compliance" with the APA. N.J.S.A. 52:14B-4(d).
Our invalidation of the joint emergency redirection order on the ground that it was not adopted in conformity with the APA makes it unnecessary to consider PSN's arguments that DEP's certification of the part of Hudson County's amendment to its Plan which requires PSN to bring the residue from its recycling operation to a county transfer station for shipment out-of-state is arbitrary and capricious and violates the Commerce Clause of the United States Constitution. When the redirection order was issued,[2] the BPU had the statutory authority "to direct individual solid waste collectors to collect and transport waste streams to specific disposal sites and require or designate specific disposal facilities as the ultimate destination of particular waste streams." A.A. Mastrangelo, Inc. v. Commissioner of Dep't of Envtl. Protection, supra, 90 N.J. at 686, 449 A.2d 516. Consequently, the DEP's certification of the part of Hudson County's amendment of its Plan which directed PSN to bring its waste to the county transfer station had no operative effect without BPU's approval. Since that approval was given *300 by means of the joint emergency redirection order which we have invalidated, there is no effective order presently requiring PSN to bring its waste to the county transfer station. In addition, on June 1, 1992, the DEP proposed the adoption of amendments to N.J.A.C. 7:26-1.4, 2.13 and 6.3 which would conditionally exclude the residue generated by PSN's recycling operations from waste flow orders. 24 N.J.R. 1995(a). Thus, PSN's substantive challenges to the part of the county solid waste management plan governing the disposal site of its waste are not only premature but probably would be mooted if the pending rule amendment is adopted.
Accordingly, we declare N.J.A.C. 7:26-6.7 and the joint emergency redirection order of February 4, 1991, adopted pursuant to this regulation to be invalid, and we dismiss the appeal from the DEP's certification of the September 27, 1990 amendment to the Hudson County solid waste management plan.
NOTES
[1] Pursuant to an executive reorganization plan discussed in footnote 2, the Department of Environmental Protection recently has been redesignated as the Department of Environmental Protection and Energy. However, since that name change did not occur until after the administrative actions relevant to this appeal, the agency is referred to in this opinion as the Department of Environmental Protection.
[2] During the pendency of this appeal, a reorganization plan was adopted pursuant to the Executive Reorganization Act, N.J.S.A. 52:14C-1 to -11, effective August 19, 1991, which transferred the Board of Public Utilities into the Department of Environmental Protection. Section 6 of the reorganization plan provided that "[a]ll responsibility and authority now vested in the Board of Public Utilities for the regulation of solid waste under L. 1985, c. 38 (C. 13:1E-136 et seq.), as amended, or under any other law or regulation, including, but not limited to ratesetting, is hereby continued and transferred to the Commissioner of the DEP." Based on this provision, it would appear that DEP now has exclusive jurisdiction over all aspects of solid waste regulation, in which event the requirement of joint agency action established in Mastrangelo would no longer be operative. However, since the emergency redirection order challenged on this appeal was adopted prior to the effective date of the reorganization plan, we have no occasion to consider the effect of the reorganization on the authority to adopt waste flow orders.