133 N.J. 206 (1993)
627 A.2d 614
IN THE MATTER OF CERTAIN AMENDMENTS TO THE ADOPTED AND APPROVED SOLID WASTE MANAGEMENT PLAN OF THE HUDSON COUNTY SOLID WASTE MANAGEMENT DISTRICT CERTIFIED BY THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION ON JANUARY 14, 1991. IN RE NEW JERSEY BOARD OF PUBLIC UTILITIES AND NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION EMERGENCY REDIRECTION OF SOLID WASTE FLOWS DATED FEBRUARY 1, 1991.
The Supreme Court of New Jersey.
Argued February 1, 1993.
Decided July 20, 1993.
*207 James M. Hirschhorn argued the cause for appellant Hudson County Improvement Authority (Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, attorneys; Mr. Hirschhorn and Philip A. Bramson, on the briefs).
Susan J. Vercheak, Deputy Attorney General, argued the cause for appellant Department of Environmental Protection and Energy (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Ms. Vercheak and Carla Vivian Bello, Deputy Attorney General, on the briefs).
Michael L. Rodburg argued the cause for respondent Prolerized Schiabo Neu Company (Lowenstein, Sandler, Kohl, Fisher & *208 Boylan, attorneys; Mr. Rodburg and David A. Thomas, on the brief).
George N. Cohen, Deputy Attorney General, submitted a letter in lieu of brief on behalf of Hackensack Meadowlands Development Commission (Robert J. Del Tufo, Attorney General of New Jersey, attorney).
Kathleen M. Grant, Assistant County Counsel, submitted a letter in lieu of brief on behalf of respondent County of Hudson (Francis De Leonardis, Hudson County Counsel, attorney).
The opinion of the Court was delivered by HANDLER, J.
This case involves the interrelationship between two statutes  the Administrative Procedure Act and the Solid Waste Management Act  and their application to administrative orders regulating the disposition of solid waste. Both statutes delineate extensive procedures for the promulgation of administrative regulations.
The Department of Environmental Protection and the Board of Public Utilities issued a joint emergency order that redirected the flow of solid waste in Hudson County in an attempt to stave off an impending overflow at a nearby landfill. Pursuant to that order, issued under the Solid Waste Management Act, certain types of commercial waste would have to be shipped out of state rather than to the local landfill. Respondent is one of the parties affected by the redirection of waste flow. Facing increased costs for out-of-state shipment, respondent challenged the validity of the emergency order. It claimed that the order was an administrative "rule" that should have been adopted pursuant to the rule-making provisions of the Administrative Procedure Act.
The narrow issues to be decided in this case is whether the promulgation of the plan amendment and emergency waste flow redirection order was governed by the procedures prescribed by the Administrative Procedure Act, and whether the failure to comply with those procedures renders the amendment and order invalid and unenforceable.

*209 I
On December 22, 1989, the Department of Environmental Protection ("DEP" or the "Department") and the Board of Public Utilities ("BPU or the "Board") jointly ordered the closure of a landfill in North Arlington, operated by the Hackensack Meadowlands Development Commission ("HMDC"). Apparently this was the sole disposal site for all of Hudson County's solid waste.
Hudson County appealed the closure. On June 14, 1990, Hudson County, the HMDC, the BPU, the DEP, and the Hudson County Improvement Authority ("HCIA") entered into an agreement permitting the continued operation of the plant pending the County's implementation of an alternative waste-disposal plan.
On September 7, 1990, the Hudson County Board of Freeholders established an alternative plan through a series of proposed amendments to its current solid waste management plan. Pursuant to the amended plan, municipal waste (i.e., residential/small business waste) would continue to be processed at the landfill. Larger waste would be delivered to a processing facility for shipment to out-of-state locations. The charge for that plan alteration would be approximately three times the original cost of processing.
The amendments were approved in January 1991 by the Commissioner of the DEP. Subsequently, on February 4, 1991, the DEP and the BPU issued a joint emergency waste flow redirection order ("redirection order" or "order") that required Hudson County's non-municipal waste to be processed and shipped out of state. The redirection order was issued pursuant to rules, N.J.A.C. 7:26-6.7, promulgated under the Solid Waste Management Act ("SWMA" or "Act"), N.J.S.A. 13:1E-1 to -27.
The redirection order itself stated that the emergency would be greater than 180 days in duration. Consequently, the order included a proviso that the DEP and the BPU would initiate formal rule-making procedures with respect to the adoption of the amendment, pursuant to departmental regulations, N.J.A.C. 7:26-6.1 to 17.12, issued under the SWMA. In addition, acting under *210 the Solid Waste Utility Control Act of 1970, N.J.S.A. 48:13A-1 to -13, BPU simultaneously granted the HCIA an exclusive franchise for the handling of all of the County's waste pursuant to the redirection order.
Respondent, Prolerized Schiabo Neu Co. ("PSN" or "respondent"), a scrap metal recycling company, challenged the Department's certification of the amendments and the joint issuance of the emergency waste flow redirection order. PSN had originally been able to take its waste to the local landfill, but under the new regulations would have to take it to a baler facility to be shipped out of state.
On appeal, the Appellate Division determined that the emergency waste flow redirection order was an administrative rule, and consequently it should have been issued in conformance with the procedures governing rule-making contained in the Administrative Procedure Act ("APA"), N.J.S.A. 52:14B-1 to 15. 258 N.J. Super. 290, 609 A.2d 501 (1992). The Court found that the amendments had not been validly approved and, further, that the redirection order itself was not valid because it had not been issued in accordance with the emergency rule-making procedures of the APA. Id. at 299-300, 609 A.2d 501. Consequently, respondent was not required to deliver its waste to an alternative waste facility.
The Appellate Division thereafter denied HCIA's request for reconsideration and a stay. It simultaneously denied the DEP's motion for a partial stay that would have permitted PSN to haul its waste directly out of state. The Court, however, granted the motion for a partial stay. We subsequently granted certification, 130 N.J. 398, 614 A.2d 620 (1992).

II
The regulation of solid waste in New Jersey is governed by a complex network of requirements derived from overlapping statutes and administrative rules. Their examination is essential to an understanding of the issues in this case.
*211 The State, through the enactment of the Solid Waste Management Act, as supplemented by the Solid Waste Utility Control Act of 1970, assumed the responsibility for regulating and managing solid waste on a statewide basis. The scope and complexity of that regulatory regime was thoroughly explained in A.A. Mastrangelo, Inc., v. Commissioner of Department of Environmental Protection, 90 N.J. 666, 449 A.2d 516 (1982). The SWMA was characterized as "a comprehensive statement by the legislature that provides a framework for the coordination of solid waste collection, disposal and utilization activity in New Jersey." Id. at 672, 449 A.2d 516.
The Act requires the boards of freeholders in each of the twenty-one counties and HMDC to develop and adopt a solid-waste management plan. The plan determines the disposition of solid waste in each district. The adoption of the plan requires published notice and an open hearing. N.J.S.A. 13:1E-24a(3). After adoption, the plan is forwarded to the DEP Commissioner who assesses the plan in light of the "objectives, criteria, and standards developed in the Statewide Solid Waste Management Act." N.J.S.A. 13:1E-24a(3).
The Commissioner also submits copies of the plan to various agencies and divisions of the DEP and to the BPU "for its review and recommendations on the economic aspects of the plan." N.J.S.A. 13:1E-24a(3). The DEP Commissioner subsequently determines whether to approve, modify, or reject the plan. N.J.S.A. 13:1E-24b. Once approved, the district waste management plan is effective for ten years. N.J.S.A. 13:1E-20a(1). On their expiration, new plans are to be developed and formulated in the same manner as the original ones. N.J.S.A. 13:1E-20a(1). The DEP must also review the plans at least once every two years but has the authority to review the plan at any time. Ibid.
If the district or the DEP determines that the plan, or any part of the plan, "is inadequate for the purposes for which it is intended, such board of chosen freeholders or the Hackensack Commission, as the case may be, shall develop and formulate a *212 new solid waste management plan, or any part thereof, and such new plan or part thereof, shall be adopted thereby pursuant to the procedures contained in [N.J.S.A. 13:1E-23]." N.J.S.A. 13:1E-20.
A district can modify its plan by adopting an amendment in accordance with the same procedures for adopting an initial plan. Once a district has proposed an amendment to its own solid-waste plan, the district must, pursuant to published notice, hold an open hearing for all those interested in the amendment, or who might be affected by the amendment. N.J.S.A. 13:1E-23b, 23c, d. All interested persons may be heard at the hearing and submit written positions with respect to the proposed amendment. N.J.S.A. 13:1E-23e.
The district, once it has approved an amendment, is required to forward the amendment to the Commissioner of the DEP and also to the BPU. N.J.A.C. 7:26-6.6(a). At that point, the DEP and the BPU jointly must publish the proposed amendment and provide notice pursuant to the APA, N.J.S.A. 52:14B-4 and N.J.A.C. 1:30; N.J.A.C. 7:26-6.6(c). Within fifteen days of publication of the proposed amendment, the DEP and the BPU must hold a public hearing on the proposed modifications. N.J.A.C. 7:26-6.6(c). Within thirty days after the public hearing, the BPU must submit its recommendations on the amendment to the DEP in writing. N.J.A.C. 7:26-6.6(d). On or concurrent with the Commissioner's approval of the amendment, "The [DEP] may ... adopt the proposed waste flow modification pursuant to N.J.S.A. 52:14B-1 et seq. [the APA] and N.J.A.C. 1:30." N.J.A.C. 7:26-6.6.
The regulatory scheme also deals specifically with the redirection of waste flow under emergency conditions. N.J.A.C. 7:26-6 and 7(a) provide that "[u]pon determination by the [DEP] that an emergency condition, including but not limited to the unanticipated closure of a disposal facility or restricted access thereto, requires the redirection of waste flows, the [DEP] may, after approval by the Board, order such redirection." The DEP also must determine the likely duration of the redirection. If it is likely to extend more than 180 days, the district must submit an *213 amendment to the original solid waste plan for approval. N.J.A.C. 7:26-6.7(a).
That comprehensive and detailed procedural scheme governs the manner in which an order for the redirection of solid waste flow may be issued and is clearly material in determining whether the redirection order in this case was validly promulgated and is enforceable.

III
The DEP and the BPU jointly issued the waste flow redirection order in February 1991, pursuant to the DEP regulations governing emergency orders for the redirection of solid-waste-flow. The agencies did not, however, follow the procedures for either rule-making or emergency rule-making provided in the APA, N.J.S.A. 52:14B-4(c). The Appellate Division determined that the redirection order was a "rule" as defined by the APA, and therefore was subject to the APA rule-making procedures. 258 N.J. Super. at 296, 609 A.2d 501.
The APA defines an administrative rule as "each agency statement that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency." N.J.S.A. 52:14B-2(e). Previously, we considered the criteria for determining whether an agency's action constituted "rule-making." Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 331, 478 A.2d 742 (1984). The Appellate Division, relying on Metromedia, found that the jointly-issued emergency waste-flow-redirection ordered "ha[d] all of the features of an administrative rule." 258 N.J. Super. at 296, 609 A.2d 501. Specifically the court found that the emergency order
applies to a large regulated class involved in solid waste generation, collection and disposal, applies generally and uniformly to classes of solid waste generators, collector and disposal sites, operates prospectively only, prescribes rules for waste disposal that are not expressly provided or clearly inferable in the SWMA, constitutes a material and significant change of past agency policy, and reflects a decision on solid waste regulatory policy."
[Ibid.]
*214 DEP claims, however, that the redirection order is not subject to the APA rule-making requirements because under the Metromedia criteria the order simply effectuates the waste-flow redirection scheme set forth in the Hudson County Plan Amendment. DEP contends that the amendment constitutes antecedent legislative authority, which the order replicates, and therefore the application of statutory rule-making procedures was not required for the issuance of the order.
We have previously determined that formal rule-making is not a prerequisite for an administrative regulation if that regulation merely expresses a policy set forth in an existing statute. See Metromedia, supra, 97 N.J. at 332, 478 A.2d 742. In In re Department of Insurance Orders, 129 N.J. 365, 609 A.2d 1236 (1992), we concluded that the Department of Insurance need not have gone through the formal rule-making process because: (1) the agency policy expressed in the administrative order had been previously expressed in a statutory amendment and did not alter the Commissioner of Insurance's position as expressed in the regulation; and (2) the order did not provide an "interpretation of law or general policy." Id. at 382, 609 A.2d 1236. The Court concluded that as long as an order "does not `prescribe[] a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization," it need not be subject to rule-making. Id. at 381-82, 609 A.2d 1236.
A comparison between the amended plan and the redirection order demonstrates substantial congruity between them. They each very specifically require the redirection of the flow of solid waste within Hudson County with respect to certain classes of waste and particular locations and facilities for the disposition of such waste. Thus, the redirection order, because it essentially expresses the provisions of the amended plan amendment, could apparently be promulgated without compliance with the rule-making provisions of the APA. However, despite the congruity *215 between the amended plan and the order, the Appellate Division ruled that the amendment had not been validly adopted and, therefore, could not be used to authenticate the redirection order. Without the backup of the amendment, the court concluded, the redirection order, which had all of the features of an agency rule, was subject to formal rule-making.
The Appellate Division concluded that the amendment had not been validly adopted because it had not been properly approved. The court noted that on January 24, 1991, the Commissioner of the DEP had approved the proposed amendment. Thereafter, the DEP and the BPU had jointly issued the emergency waste flow redirection order. However, because BPU had approved the amendment only "by means of the joint emergency redirection order which [the court had] invalidated," the Appellate Division concluded that the approval by the BPU had itself been ineffective, and consequently the amendment had not been validly adopted. 258 N.J. Super. at 295, 609 A.2d 501.
The Appellate Division's invalidation of the joint emergency redirection order was based on the fact that it had not been passed as an emergency measure pursuant to the emergency-rule-making provisions of the APA, namely, N.J.S.A. 52:14B-4(d). Instead, the waste-flow redirection order was promulgated under DEP's own procedures for issuing emergency orders, N.J.A.C. 7:26-7. The failure to conform to the specific and special requirements for emergency rule-making under the APA was fatal, according to the Appellate Division. 258 N.J. Super. at 298-99, 609 A.2d 501.
The APA provisions for emergency rule-making require the concurrence of the Governor for the issuance of emergency orders. They further contemplate the concurrence of the Legislature if the emergency extends beyond successive sixty-day periods. DEP's own emergency rule-making regulations for waste flow redirection allow emergency orders to be issued without the involvement of the Governor or Legislature; in addition, such orders can last for 180 days before formal rule-making is required.
*216 We agree with the Appellate Division that a conflict exists between DEP's own regulations for issuing waste-flow redirection orders on an emergency basis and the requirements for the issuance of emergency rules under the APA. Nevertheless, we have grave reservations about whether the APA requirements were intended by the Legislature to govern the emergencies that necessitate the redirection of solid-waste flows.
DEP's primary statutory mandate, pursuant to the SWMA, is generally to direct the flow of solid-waste streams. The Legislature vested power in the DEP to deal with "one of this state's most severe problems: the rapid disappearance of available solid waste disposal facilities." Mastrangelo, supra, 90 N.J. at 671, 449 A.2d 516. That legislation was enacted in order to deal with the myriad crises arising in New Jersey due to the ever-increasing scarcity of sites for dumping and landfill. Id. at 670, 449 A.2d 516; see also Hackensack Meadowlands v. Municipal Landfill Auth., 68 N.J. 451, 460, 348 A.2d 505 (1975) (recognizing the scope of problem posed by increasing waste disposal in face of diminishing disposal sites), rev'd on other grounds, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978). "[T]he Legislature intended to vest in the [DEP] great supervisory powers over the critical and urgent need for solid waste disposal." In re Application Combustion Assocs., 169 N.J. Super. 305, 316, 404 A.2d 1194 (App.Div. 1979). Thus, the underlying policies and rationale for the Solid Waste Management Act strongly support the implication of emergency rule-making powers in the DEP with respect to the disposal of solid waste. The absence of an express statutory authorization will not preclude an agency from acting where "by reasonable implication, that action can be said to promote or advance the policies and findings that served as a driving force for the enactment of that legislation." Mastrangelo, supra, 90 N.J. at 683-84, 449 A.2d 516.
In addition, N.J.A.C. 7:26-6.7, as a rule of procedure, was a regulation subject to APA rule-making. The DEP rule itself was adopted in 1982 in accordance with those requirements, i.e., publication, notice, public comments, and public hearings. Further, *217 our courts have repeatedly sustained emergency redirection orders adopted pursuant to N.J.A.C. 7:26-6.7. See In re Fiorillo Bros., 242 N.J. Super. 667, 577 A.2d 1316, certif. denied, 122 N.J. 363, 585 A.2d 371 (1990); In re Camden County Solid Waste Management Dist., 214 N.J. Super. 247, 518 A.2d 1105 (App.Div. 1986); and In re New Jersey Bd. of Pub. Utils., 200 N.J. Super. 544, 491 A.2d 1295 (App.Div. 1985). Although the Appellate Division was not impressed by those cases, 258 N.J. Super. at 298, 609 A.2d 501, they are a strong indication of the general understanding that the DEP regulatory provision constitutes the operative administrative authority for the issuance of emergency orders for the redirection of solid waste flow.
In any event, we need not definitively resolve the issue of whether the Legislature intended that the emergency orders for the redirection of solid-waste flow be subject to the emergency rule-making provisions of the APA. That determination is obviated because the redirection order in this case, although denominated an emergency waste flow redirection order, does not appear to constitute an emergency measure. The DEP rule specifies that redirection orders may issue if an emergency arises from the "unanticipated closure of a landfill." N.J.A.C. 7:26-6.7. In this case, the closure of landfill E-1 was fully anticipated; closure was ordered in 1989. In fact, the redirection of its waste flow was the subject of continuing agency regulation since that time. Thus, the redirection order that was issued in February 1991 served only to implement the Hudson County Plan Amendment.
The question remains, however, whether the redirection order, despite the flaws in its issuance, can serve as a valid approval by DEP and BPU of the plan amendment. That question parallels DEP's additional point that BPU also expressed its approval of the amendment by granting an exclusive franchise to the HCIA. Thus, after the joint issuance of the redirection order, the BPU granted the HCIA an exclusive franchise to dispose of all of Hudson County's waste in conformity with the order and amended plan. The franchise grant explicitly referred to the substance of *218 the amendment, and evidenced BPU's implicit acknowledgement and approval of the solid waste redirection scheme. Hence, according to DEP, the plan was validly adopted based on BPU's approval through the franchise grant, and served as the legislative basis for the redirection order, obviating resort to formal rule-making procedures.
The requirement that district plans governing the disposal of solid waste be jointly approved by DEP and BPU was derived in part from our decision in Mastrangelo, supra, 90 N.J. 666, 449 A.2d 516. We found that the DEP and the BPU possessed overlapping authority under the SWMA and the Solid Waste Utility Control Act for regulating solid-waste flow. Id. at 681, 449 A.2d 516. In response to Mastrangelo, the DEP and BPU adopted regulations providing for the joint approval and adoption of waste-flow plans that prescribed specific locations for waste disposal. N.J.A.C. 7:26-6.6. Those regulations apply to the Hudson County amendment because it redirected certain solid-waste types to specific locations.
We have never directly considered the standards governing the manner in which BPU was required to express its approval of any waste-flow plans. We need not, however, resolve whether approval through the grant of a franchise or, for that matter, by the joint issuance of the redirection order satisfies the element of approval required to validate a solid-waste plan amendment. Resolution of that issue is unnecessary because it does not directly answer the question whether the amendment was otherwise properly adopted. In addition, the question of dual agency approval will not recur. The BPU has been incorporated into the DEP, now known as the Department of Environmental Protection and Energy ("DEPE") by Reorganization Plan No. 002-199, N.J.S.A. 13:1D-1 note. Section 6 of the Reorganization Plan vests all functions of the BPU under any law with respect to solid waste, including rate regulation, in the Commissioner of the DEPE. Hence, approval of plan amendments is now the responsibility of DEPE.
*219 Regardless of the manner in which the agencies expressed approval of the amendment, whether through the redirection order or the BPU franchise grant, the plan amendment itself was not enacted in accordance with the proscribed procedures for amending a solid-waste-management plan. A procedural wrinkle still remains: The DEP and the BPU failed to proceed with formal notice and comment and hold open hearings on the amendment in conformity with the rule-making procedures of the Administrative Procedure Act, N.J.S.A. 52:14B-4 and N.J.A.C. 1:30, as required by the DEP's own rules, i.e., N.J.A.C. 7:26-6.6
Prior to the DEP or the BPU receiving the amendment, the Hudson County Board of Freeholders was itself required to hold open hearings on the proposed waste-flow modifications, and to provide opportunity for written comment on the amendment. N.J.S.A. 13:1E-23b-e. Petitioner thus had the opportunity to comment on the amendment at least at the district level. Because petitioner had an occasion to express its views, DEP contends that those hearings should satisfy any of PSN's concerns about procedural due process. In a sense, DEP asserts that the district's open hearing should eliminate the requirement of a hearing at the agency level.
DEP misses the point. It created its own procedures for approving amendments. Given that DEP opted for notice, publication, comment, and hearing prior to amending a waste flow plan, it has created public expectations that such procedures will be followed. It is immaterial whether such procedures largely replicate similar hearings conducted on a more localized basis.
Nevertheless, DEP contends that it was free to disregard its own rules of procedure because the adoption of the APA requirements was itself discretionary. DEP, however, cannot treat its own rules of procedure dismissively. The APA states that an "agency statement that ... describes the procedures or practice requirements of an agency" is itself an administrative rule. N.J.S.A. 52:14B-2(e). See Woodland Private Study Group v. State, 109 N.J. 62, 69-76, 533 A.2d 387 (1987) (distinguishing *220 between agency directives that affect public at large and thus call for rule-making, and directives that are essentially internal communications and may be adopted informally). Thus, the procedural regulations that govern the adoption of plan amendments are themselves rules that must be adopted in accordance with the APA rule-making requirements. Further, "an agency statement" that constitutes a rule "includes the amendment of or repeal of any rule." N.J.S.A. 52:14B-2(c). Hence, the agency decision to abandon or modify its own procedural regulations must also be accomplished through rule-making.
The Appellate Division, in concluding that APA rule-making procedures were applicable for the adoption of the redirection order, pointed out that:
the DEP and the BPU implicitly acknowledged that the waste flow redirection orders are administrative rules by providing in N.J.A.C. 7:26-6.6 that the agencies must follow the notice requirements of N.J.S.A. 52:14B-4 before modifying an existing waste flow order and by adopting waste flow orders as administrative rules which are published in N.J.A.C. 7:26-6.5."
[258 N.J.Super at 296[, 609 A.2d 501]].
In other words, because amendments or modifications to waste-flow plans were subject to the APA procedures governing rules, the court felt that emergency redirection waste-flow orders should, similarly, be subject to APA procedures governing emergency rules. However, the point to be drawn from the court's observation is that DEP's own regulation, i.e., N.J.A.C. 7:26-6.6, expressly incorporates N.J.S.A. 52:14B-4 and N.J.A.C. 1:30, and requires the application of the formal notice and hearing rule-making procedures of the APA to plan amendments and redirection waste-flow orders.
In the face of such clear and consistent statutory and regulatory stricture imposing rule-making requirements for the adoption or repeal of procedural rules, it would ill behoove the Court to disregard those procedural requirements. See In re Camden County Solid Waste Management Dist., supra, 214 N.J. Super. at 255, 518 A.2d 1105 (noting that adherence to requirements of N.J.A.C. 7:26-6.6 and APA are of great importance for proper *221 enactment of solid waste amendments). Furthermore, not only do those procedural rules expressly require the enactment of waste-flow plan-modifications to be based on APA rule-making procedures, the redirection order adopted by the DEP and BPU in this case itself provided that its final adoption would be contingent on the completion of formal rule-making procedures, after the emergency period had exceeded 180 days.
In conclusion, DEP was authorized to invoke its own procedures for the adoption of the redirection order on an emergency basis. However, the redirection order clearly was intended to implement the amended plan of Hudson County for the disposal of waste in that district and to extend beyond 180 days. Under those circumstances, we find that the DEP was required by its own regulations to adhere to the procedural requirements of the APA governing rule-making with respect to adoption of the plan amendment.

IV
The question remains whether the failure to conform to those procedures of the APA invalidates the amendment and redirection order and renders them unenforceable. The plan amendment and waste flow redirection order clearly express and effectuate a regulatory policy that bears directly and substantially on the public health and welfare. See Mastrangelo, supra, 90 N.J. at 670, 449 A.2d 516. Further, in light of the circumstances surrounding the issuance of the amendment, the procedural defects in its adoption can be cured. The administrative action is amenable to correction, and can be ratified and applied retroactively.
In Frank A. Greek v. Township of South Brunswick, 257 N.J. Super. 94, 104-05, 607 A.2d 1359 (1992), the Appellate Division observed: "It is elemental `that if a municipal body or agency has the power to act, but has failed to follow exactly the proper procedures to exercise that power, its irregular, but not ultra vires action may be subsequently ratified.'" (quoting Ferreira v. City of Asbury Park, 237 N.J. Super. 142, 162, 567 A.2d 233 *222 (App.Div. 1989)). The court there considered the propriety of allowing the Council on Affordable Housing ("COAH") to remedy previous procedural deficiencies pertaining to mandatory development fees authorized by municipal ordinance. The Supreme Court had previously invalidated those ordinances because they had not been authorized by the adoption of enabling administrative regulations. Holmdel Builders Ass'n v. Township of Holmdel, 121 N.J. 550, 583 A.2d 277 (1990). The Appellate Division, in Greek, concluded that as long as COAH's actions in endorsing the municipal ordnance were not ultra vires, the agency could properly ratify and validate the ordinances through the adoption of proper enabling regulations.
It stated that "[i]f the Legislature can promulgate curative legislation having the effect of validating municipal conduct which at its inception was void, we see no reason why an administrative agency cannot by properly exercising its rule-making authority cure municipal action which was not void ab initio. See Edwards v. Mayor, etc., of Borough of Moonachie, 3 N.J. 17, 21-22, 68 A.2d 744 (1949);" 257 N.J. Super. at 105, 607 A.2d 1359; see also De Muro v. Martini, 1 N.J. 516, 522, 64 A.2d 351 (1949) (holding that irregular exercise of power may be subsequently ratified or corrected by municipal body); Edgewater Park v. Edgewater Park Housing Auth., 187 N.J. Super. 588, 602, 455 A.2d 575 (Law Div. 1982) (stating that irregular actions of municipal bodies may be ratified); Houman v. Mayor of Pompton Lakes, 155 N.J. Super. 129, 160, 382 A.2d 413 (Law.Div. 1977) (concluding that public body may subsequently cure and ratify procedurally infirm agreement that it has authority to make).
The infirmity in the agency action in this case does not involve the absence of statutory authority but rather procedural irregularity. The DEP and the BPU clearly are vested with the statutory authority to amend waste-flow plans. Therefore, the adoption of the plan amendment and redirection order was not ultra vires, and any procedural flaws or deficiencies may be remedied by the agencies.
*223 We also find that the adoption of curative regulatory measures to validate the Hudson County plan amendment may also be applied retroactively. In Greek, the court determined that retrospective application of a regulation was proper where "1) the legislative body has expressed the intent to do so, 2) the legislation is ameliorative or curative, 3) the expectations of the parties warrant retroactive application, and 4) manifest injustice to the adversely affected does not result." 257 N.J. Super. at 106, 607 A.2d 1359 (citing Gibbons v. Gibbons, 86 N.J. 515, 522-23, 432 A.2d 80 (1981)).
In this case the criteria for the retroactive application of validating agency action would appear to be readily satisfied. The adoption of the plan amendment and order through proper rule-making procedures would clearly effectuate the governmental intent to validate the waste-flow modifications that have been otherwise clearly expressed and approved.
Further, it appears that the expectations of the parties would warrant retroactive application of the plan amendment. As earlier mentioned, substantial congruity clearly exists between the provisions of the amendment and the redirection order. Supra at 221, 627 A.2d at 622. Hudson County's amendment to its solid waste-plan was based on a report prepared by the County's Solid Waste Management Task Force. The amendment set forth (as part of a larger set of modifications) provisions for the closure of a certain in-state landfill, the E-1 landfill site, and for the transfer of certain types of solid waste to an out-of-state facility. According to section 7.6-1a of the plan, the County implemented a short-term disposal and transfer strategy to deal with the closure of its E-1 landfill site. The emergency redirection of solid waste flow order issued jointly by the DEP and BPU refers specifically to the amendment and implements the modified plan. In addition, BPU's grant of an exclusive franchise to the HCIA for the transport of waste pursuant to the amendment incorporated the provisions of the amendment.
*224 It is equally clear that retroactive application of a regulation will not result in manifest injustice to the parties adversely affected by such action. The Hudson County Board of Freeholders held hearings prior to its own approval of the amendment. Petitioner was provided with an opportunity to comment on the matter at the early stages of the amendment process. Further, PSN had notice of the proposed waste-flow redirection order. That is evidenced in part by PSN's own petition for relief on February 11, 1990, in response to the DEP's initial emergency order that would require respondent to ship waste to the HMDC Baler and then have it sent out of state. That petition reveals that PSN had "[s]ince August 1990" been in a "continued dialogue with Hudson County, through the HCIA to get relief from the unfair and onerous transfer station requirement * * *." Thus, PSN was in no way surprised due to the lack of formal notice or hearings at the stateagency level concerning the amendment and redirection order. Thus, we find that petitioner will in no way suffer undue harm from the retroactive application of the amendments or the redirection order.
Finally, we note that the DEPE adopted various amendments to its own regulations on December 10, 1992: N.J.A.C. 7:26-1.4, -2.13, -6.3, and a new regulation, -6.8, all of which became effective January 4, 1992. The amendments conditionally exempt from the waste-flow rules. N.J.A.C. 7:26-6, auto-shredder residue, the sole type of waste that PSN produces. Hence, PSN would be exempted prospectively from any waste-flow-redirection order. Those recent amendments, we recognize, bear directly on whether it will be fair or sensible for DEPE to retroactively apply the amendment and redirection order under scrutiny in this case.

V
We conclude that the current Hudson County amendment plan and the state redirection order, although not ultra vires, were not validly adopted. Because the invalidity is attributable to procedural irregularity, those agency actions can be validated and *225 ratified. The decision to adopt corrective measures to validate the amendment plan and redirection order and their retroactive application rests in the sound discretion of the Commissioner of the DEPE.

VI
The judgment of the Appellate Division is affirmed in part and reversed in part.
For affirmance in part; reversal in part  Chief Justice WILENTZ and Justices HANDLER, CLIFFORD, POLLOCK, O'HERN, GARIBALDI, and STEIN  7.
Opposed  None.