237 N.J. Super. 142 (1989)
567 A.2d 233
ALCIDES FERREIRA, PLAINTIFF-APPELLANT,
v.
CITY OF ASBURY PARK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1989.
Decided November 30, 1989.
*145 Before Judges KING and SKILLMAN.
John W. Wopat, III argued the cause for appellant (Falvo & Wopat, attorneys; John W. Wopat, III, on the brief reply brief).
Anne S. Babineau argued the cause for respondent (Wilentz, Goldman & Spitzer, attorneys; Anne S. Babineau of counsel and on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
In this taxpayer's suit the plaintiff, Alcides Ferreira, a resident of Asbury Park, contends that the Law Division judge erred in summarily ruling that defendant, City of Asbury Park, could vacate a portion of Ocean Avenue and sell it and three *146 parcels of ocean-front land to a private developer for urban renewal purposes. We disagree and affirm.
On August 24, 1988 the City adopted an ordinance which vacated a portion of Ocean Avenue between Third Avenue and Fourth Avenue and amended its official map to reflect this street vacation. Ocean Avenue extends north to south along the Atlantic Ocean; Third Avenue and Fourth Avenue extend east to west and terminate on their east ends at Ocean Avenue. On September 7, 1988 the City adopted a resolution authorizing the sale of three parcels of land lying east of Ocean Avenue and west of the ocean-front boardwalk between Third Avenue and Seventh Avenue to Carabetta/Vaccaro Developers (developer), a private developer which is also called Asbury On The Ocean and Ocean Mile Development Group. The three parcels comprise a narrow strip of land, approximately 100 feet wide, immediately west of the boardwalk and east of Ocean Avenue.
On September 16, 1988 plaintiff filed this complaint in lieu of prerogative writs. He attacked the City's above-described actions on three theories.
First, plaintiff relies on the April 4, 1903 deed from James A. Bradley and his wife Helen M. Bradley, to the City, recorded on April 16, 1903. James A. Bradley was "the founder of Asbury Park," in the sense that, from some time before 1875, title to all land in Asbury Park was apparently derived from him. See Casriel v. King, 2 N.J. 45, 48 (1949). Bradley died in 1921. Plaintiff says that by the 1903 deed Bradley conveyed to the City, in exchange for $100,000, what is commonly called the "beachfront and boardwalk area." The vacated portion of Ocean Avenue and the three oceanfront parcels at issue in this case are within this area. Plaintiff stresses that the 1903 deed states as follows: "the said Ocean Avenue to be and forever remain a public street." He alleges that, because of this language, the 1903 deed "dedicates" Ocean Avenue "to the public as a street forever." Therefore, he claims the ordinance *147 vacating a portion of Ocean Avenue is "contrary to the 1903 deed."
Second, plaintiff said that the 1903 deed contains a covenant that said the conveyed "lands are to be used by the said City of Asbury Park for the purposes set forth in the Act of the Legislatures of the State of New Jersey, entitled, `An Act to authorize cities bordering on the Atlantic Ocean to purchase the lands in any such city bordering on the ocean and adjacent lands thereto in such city for public purposes and to improve the same, and to issue bonds for such purposes,' approved March 23, 1900, L. 1900, c. 99, and the Act of April 24, 1902, amendatory thereof, L. 1902, c. 275, and for such other purposes and uses as may be now or hereafter authorized by law." Both acts authorized such cities to purchase such lands "for public purposes and for places of resort for public health and for recreation and to improve the same." Plaintiff observes that the 1903 deed, which also was signed by defendant, stated that the Bradleys and the City "agreed that this covenant shall attach to and run with the said land and that the said covenant shall be for the benefit of and may be availed of by any tax payer or holder of land in the said City of Asbury Park." Plaintiff urges that the City had "accepted the 1903 Bradley deed with covenants," and had "dedicated the land to the public." Therefore, plaintiff claims the resolution authorizing the sale of the three parcels to the developer "for development as commercial shops and/or private condominium residences" is "violative of the covenants in the [1903] Bradley deed," and also "contrary to law."
Third, plaintiff claims that the City adopted the ordinance vacating a portion of Ocean Avenue on August 24, 1988 but "failed to refer the proposed ordinance to the Asbury Park Planning Board." He asserts that the City's action in adopting the ordinance is illegal because it is "contrary to the Municipal Land Use Law."
*148 On September 23, 1988 defendant filed a motion for summary judgment before answer. On October 11, 1988 the Planning Board of the City of Asbury Park (Board) adopted a resolution, stating that it had "previously reviewed and recommended adoption of the Waterfront Redevelopment Plan," and that a "fundamental element of that Plan is the creation of large development parcels by vacation of portions of Ocean Avenue." The Board's resolution also observes that the City had adopted an ordinance to "vacate the relevant portion of Ocean Avenue between Third and Fourth Avenues," and that, "to the extent that the street closings also constitute an amendment to the `official map' of the City of Asbury Park," the Board "has been asked to review and make recommendations regarding the proposed changes in the streets." Finally, the resolution states that, "by virtue of its previous review and approval of the Redevelopment Plan," it "has already reviewed and approved the implementation of the Redevelopment Plan by adoption of an ordinance vacating the portions of the streets shown on Figure 25," which vacations include the "relevant portion of Ocean Avenue between Third and Fourth Avenues." The Board's October 11, 1988 resolution ends with the Board stating that it "hereby reaffirms that it approves the street vacations described in the [August 24, 1988] Ordinance ... and [approves] a change to the official map to reflect those vacations."
On November 7, 1988 Judge Milberg heard argument on the City's motion for summary judgment. Finding no dispute of material fact, he ruled in favor of the City on these legal issues. This appeal ensued.
Several title and conveyancing issues are at the core of this appeal. They arise from three recorded documents. On April 22, 1878 James A. Bradley filed a map depicting the lot and street layout for the City of Asbury Park from Ocean Avenue on the east to Main Street on the west and from Deal Lake on the north to Wesley Lake on the south. We will call this the "1878 map." Along the top margin of the 1878 map is this handwritten legend: "All that portion of this Map included *149 within the black line in ink is filed subject to the condition written on the margin below and all outside the black line in ink is not filed." Along the bottom margin of the map is this handwritten condition:
This map is filed only as to the lots and streets which are included within the black lines in ink, and all the streets within said lines are dedicated to public use. In case any of the grounds marked street on that portion of the map which is filed are used for any other purpose than public streets or highways, the same shall revert to James A. Bradley, his heirs or assigns.
The black ink line contains that portion of Ocean Avenue, which was 75 feet wide at the time, extending from Fifth Avenue in the north to Asbury Avenue in the south. Asbury Avenue is the east-west street north of Wesley Lake. The easterly black ink line runs along the easterly line of Ocean Avenue.
The 1903 deed and covenant with the City described the land conveyed as "[b]ounded on the North by the south edge of the flume at the foot of Deal Lake, on the East by the Atlantic Ocean, on the South by the middle of Wesley Lake and on the West by the westerly line of Ocean Avenue projected and extended northwardly to the south edge of said flume at the foot of Deal Lake, and southwardly to the middle of said Wesley Lake." By this deed and covenant the City undertook to "within one year next after the date hereof, in due form of law, lay out and dedicate to public use for a public street, a strip of land twenty-five (25) feet in width immediately adjoining the present easterly side of the aforesaid Ocean Avenue on the east thereof, the whole length of said Avenue, so as to make the said Ocean Avenue a public street one hundred feet in width from Wesley Lake on the South to the flume at the foot of Deal Lake on the North." The City "accepted the (1903) Bradley deed," and "dedicated Ocean Avenue to the public as a public road 100 feet in width." In the 1903 deed Bradley and his wife also conveyed to the City "all ... the reversion and reversions, remainder and remainders, ... [a]nd also, all the estate, right, title, interest, dower and right of dower, property, possession, claim and demand whatsoever, as well in law as in equity, of ... [Bradley and his wife], of, in or to the above *150 described premises and every part and parcel thereof" (emphasis added).
On September 19, 1988 Patricia McEvoy, "Trustee, under the Last Will and Testament and Codicils thereto of James A. Bradley," executed a deed to the developer here covering all the subject property, and specifically referring to the 1878 map and 1903 deed. In this deed the trustee did "remise, release and forever quitclaim unto the ... [developer], its successors and assigns, all the aforesaid lots or parcels of land hereinabove described, freed and discharged of and from all right of entry for conditions broken, right of action, reversion or forfeiture, which the said James A. Bradley, at the time of his death, or which the ... [trustee] now has, or might have or could have in, or to the said lots or parcels of land ... for or by reason of the conditions, exceptions and reservations contained in the above mentioned deeds of conveyance from the said James A. Bradley and wife, under which the ... [developer] holds the title to the said lots, or by reason of any violation of the said conditions, exceptions and reservations." We will call the September 19, 1988 deed the "1988 deed."
The City claims that the 1988 quit-claim deed conveyed to the developer "whatever interest" the Bradley estate "might have had" in the subject lands. Plaintiff agrees that, by executing the 1988 deed, the Bradley estate released to the developer "all the right, title and interest of the Estate in certain lands including those involved in this action," but claims that the reverter mentioned in the 1878 map was somehow "removed" by the 1903 deed to defendant, the City.
Plaintiff advances several contentions on this appeal:
I. The City does not have the statutory authority to sell land devoted to public use to a private party for private use.
II. The 1988 resolution authorizing defendant's sale of the three beachfront parcels was invalid because it violated the covenant in the 1903 deed.
III. The City's 1988 vacation and sale of a portion of Ocean Avenue was a violation of the 1903 deed and illegal.
IV. The City's 1988 ordinance vacating portions of Ocean Avenue was illegal because in violation of the Municipal Land Use Law.
*151 The City asserts that plaintiff's claim is time-barred by laches and R. 4:69-6(a). We conclude that plaintiff's claim fails on the merits and do not reach the timeliness issue.

I
Plaintiff first claims that, "[q]uite apart from the restrictive covenant in ... [the 1903] deed," the City has no statutory authority to sell "municipally-owned lands" presently "devoted to public use" to a private developer for "development as commercial shops and/or private condominium residences." We disagree.
Our Constitution says that the "clearance, replanning, development or redevelopment of blighted areas" is a "public purpose and public use." N.J.Const. (1947), Art. VIII, § III, par. 1. The Redevelopment Agencies Law says redevelopment agencies are governmental agencies "for the public purposes" of acquiring, replanning, redeveloping or disposing of blighted areas "in such manner that they shall become available for economically and socially sound development by private or public enterprise or by a combination of both." N.J.S.A. 40:55C-2. Also, N.J.S.A. 40:55C-30(c) says "all powers conferred by this act ... are for public uses and purposes," and a municipality "shall afford maximum opportunity, consistent with the sound needs of the municipality as a whole, to the conservation or rehabilitation or redevelopment of [blighted] areas by private enterprise."
Under the Redevelopment Agencies Law, N.J.S.A. 40:55C-1 to -108, a municipality may directly exercise all the powers conferred in the Redevelopment Agencies Law upon a redevelopment agency created pursuant to that law. N.J.S.A. 40:55C-37. Under the Local Housing Authorities Law, N.J.S.A. 55:14A-1 to -58, a municipality may directly exercise all the "powers conferred ... in the `Local Housing Authorities Law'" upon a housing authority created pursuant to that law. N.J.S.A. 55:14A-56. In its "official actions" here, the City claims *152 authority to sell the subject land under N.J.S.A. 40:55C-37 and N.J.S.A. 55:14A-56.
N.J.S.A. 40:55C-12(h) grants a redevelopment agency the power to "sell ... any right, title, claim, lien or demand however acquired," and specifically, the power to "sell ... any interest in real or personal property." N.J.S.A. 55:14A-7(d) grants a housing authority the power to "sell ... any real or personal property or any interest therein."
Plaintiff concedes that it is "clear that municipal land may be sold to a private developer," and that the Supreme Court so held in McClintock v. Trenton, 47 N.J. 102, 104-106 (1966). However, plaintiff contends there is no specific authority in either statute to sell land presently devoted to public use. He also notes that in McClintock the Court did not reach the present issue, that is, whether the "general authority" of a redevelopment agency or housing authority to sell land to a private developer extends to the sale of land devoted to public use.
Plaintiff adverts to the Housing and Redevelopment Co-operation Law, N.J.S.A. 55:14B-1 to -13, because the City has also urged that it had authority to sell the land under that Act. First, plaintiff claims that this Act does not apply in this case because it "applies to purposes of slum clearance and low income housing only. See N.J.S.A. 55:14B-2." We disagree. N.J.S.A. 55:14B-2 refers to "unsafe and unsanitary housing conditions and a shortage of safe and sanitary dwelling accommodations for persons of low income" and to "blighted areas or areas in the process of becoming blighted."
Plaintiff also notes that N.J.S.A. 55:14B-4(l) says that, "[f]or the purpose of aiding and co-operating in the planning, undertaking, construction or operation of housing or redevelopment projects located within the area in which it is authorized to act, any public body may ... grant, sell, convey or lease ... any of its property, including real property already devoted to a public use, whether held in a proprietary or governmental *153 capacity, to a housing authority or redevelopment agency; provided, that the public body making the grant or lease determines that the premises are no longer required for the public purposes to which the property is devoted, and that it is in the public interest so to grant, sell, convey or lease said property." Plaintiff claims that, because the "power to sell" in N.J.S.A. 55:14B-4 is "strictly limited to a sale to a housing authority or redevelopment agency," there is "no authority under this law to sell to a private developer." He asserts that a public body's sale power is so limited because, "if this land [already devoted to a public use] had to be included in a development plan," the Legislature knew it "could only trust a public agency," like a housing authority or redevelopment agency, "to see to it that such lands remained devoted to those public uses they were already serving."
Plaintiff's assertions are flawed. First, if the Legislature intended a housing authority or redevelopment agency to insure that property already devoted to public purposes remained devoted, following its sale, to those public purposes it was already serving, the Legislature would not have required the public body to determine that the property was "no longer required for the public purposes to which the property is devoted" before selling it to a housing authority or redevelopment agency. N.J.S.A. 55:14B-4(l). Second, plaintiff concedes that a housing authority or redevelopment agency has the "general" statutory power to sell its property to a "private developer." Conceding this, we find it illogical to think that the Legislature in N.J.S.A. 55:14B-4(l) gave these agencies the power to purchase property which is no longer required for the public purposes to which the property was devoted, but restricted such agencies from selling such property, even if it "had to be included in a development plan."
Plaintiff also contends that N.J.S.A. 40:60-51.7 "deals squarely with the instant situation," and that it expressly denies defendant the authority to sell the subject land by *154 private sale to a private developer. The City contends that this subsection does not apply to the facts before this court. We agree with the City.
In pertinent part, N.J.S.A. 40:60-51.7 says: "Whenever any municipality in this State shall heretofore have acquired lands for public purposes and for places of resort for public health and recreation and to improve the same, and shall thereafter have acquired other lands, which the governing body of the said municipality shall deem to be better suited for the purposes of resort for public health and recreation, and shall have improved such other lands; ... it shall be lawful for the governing body of such municipality to sell such land first acquired, ... at public auction, to the highest bidder or bidders." As the City contends, this case does not involve the very narrow situation where a municipality seeks to "sell land acquired for public purposes," after it had acquired "other lands better suited for such purposes and [had] improved those other lands." This particular statute is not pertinent as a limit on governmental power otherwise validly conferred.
The judge did not err in concluding that the City had statutory authority to sell land devoted to public use to a private developer for urban renewal purposes. The question remains for discussion whether, given the alleged restrictive covenant in the 1903 deed, the City could sell this particular land to a private developer.

II
In the 1903 deed executed by the Bradleys and the City, the Bradleys, in exchange for $100,000, conveyed to the City the subject land. The deed, signed by the Bradleys and the City, contains a "covenant," which in pertinent part says that the conveyed "lands are to be used by the ... City of Asbury Park ... for public purposes and to improve the same, ... and for such other purposes as may be now or hereafter authorized by law." The deed also says that Bradley and the City "agreed *155 that this covenant shall attach to and run with the ... land and ... shall be for the benefit of and may be availed of by any taxpayer or holder of land in the ... City of Asbury Park."
In the deed, Bradley and his wife conveyed to the City "all ... the reversion and reversions, remainder and remainders, ... [a]nd also, all the estate, right, title, interest, dower and right of dower, property, possession, claim and demand whatsoever, as well as in law as in equity, of ... [Bradley and his wife], of, in or to the ... [subject] premises and every part and parcel thereof." The deed's habendum clause, which defined the extent of the City's interest in the land, says: "To have and To hold all and singular the above mentioned and described premises, together with the appurtenances, unto the [City], its successors and assigns forever, to the only proper use, benefit and behoof of the [City], its successors and assigns forever." Considered in the entirety, we think this language in the 1903 deed supports a conclusion that the City has a fee simple estate and can convey that estate to the private developer.
As a fundamental principle, the terms of a dedication made by a private donor are "more strictly construed against the governmental grantee than when the property is acquired by government, through purchase or condemnation." Lander v. Village of South Orange, 58 N.J. 509, 516 (1971). The City purchased this land for the substantial consideration of $100,000 in 1903 dollars. The wording of the 1903 deed is thus open to judicial interpretation.
The covenant says that the conveyed land is "to be used by the... City of Asbury Park." Plaintiff claims that the words "used by" the City necessarily mean that the land "could not legally be... conveyed away" by the City. He asserts that any correct construction of the covenant must "leave Ocean Avenue and the beachfront lands ... in public hands."
The verb "use" simply means "to make use of, to convert to one's service, to avail one's self of, to employ." Black's Law Dictionary (5th ed. 1979) at 1381. Words like "use" and "to be *156 used" must be construed in context. State v. Stockwell, 23 N.D. 70, 134 N.W. 767, 772-773 (1912). For example, depending on the context, the word "use" is not necessarily synonymous with "ownership." 134 N.W. at 773. Also, the "right to use" land, while an "incident of ownership," does not "necessarily imply ownership" of the land. Lancaster County Bank v. Marshel, 130 Neb. 141, 264 N.W. 470, 475 (1936). Accord Stockwell, 134 N.W. at 773.
In this regard, we consider as persuasive City of Los Angeles v. Superior Court of the County of Los Angeles, 51 Cal.2d 423, 333 P.2d 745 (1959), which helped clear the way for the transfer of New York's Brooklyn Dodgers to Los Angeles. The Housing Authority of the City of Los Angeles had conveyed the Chavez Ravine property, the site of the proposed new baseball stadium, to the City of Los Angeles. Some taxpayers claimed that the City did not have the power to sell to a private corporation, the Brooklyn National League Baseball Club, land held by the City subject to a public purpose restriction imposed by the grantor's deed to the city. This deed contained a "restriction" which said the property conveyed to the City was "to be used for public purpose only; and not to be used directly or indirectly by the City of Los Angeles, or its grantees, successors in interest, assigns, or any other person or persons whatsoever claiming by, through or under the City of Los Angeles, for a period of 20 years from and after the date hereof, for residential development or residential subdivision." Id. at 436, 333 P.2d at 752.
The California Supreme Court concluded that the Housing Authority "did not intend by this [deed] to prohibit the city from selling the property," because the provision "contains no such limitation and plainly contemplates the possibility of a sale in that the restriction is made applicable to use of the property by the `grantees' and `assigns' of the city." Ibid.
The Bradleys' 1903 deed did not specifically prohibit the City from selling the land; the deed runs to the City and "its *157 successors and assigns," for the "use, benefit and behoof" of the City and "it successors and assigns." Likewise, in the deed the City agreed to the covenant "for itself," and for "its successors and assigns." Finally, in the deed the Bradleys and the City agreed that the covenant was to "attach to and run with the ... land." This also shows they contemplated the possibility of the land's sale to a third party. We cannot conclude, by the covenant that the land be "used by the ... City of Asbury Park" for the designated purposes, that the Bradleys and the City intended to prohibit the City from ever selling the land.
Other reasons support this conclusion. If the covenant did effect a "dedication" of the land "to public use," then the City could not simply convey the land to a "private person," such as the private developer here, "subject to the restriction" that it be used for "public use." Springfield Tp. v. Board of Educ., 217 N.J. Super. 570, 579 (App.Div. 1987). Such a "with-restriction" conveyance is an "illusory fiction in every legal, functional and practical sense." Ibid. Ownership by a private person of property subject to a dedication to public use does not "preserve the dedication," because a "private person does not, nor can he, use his property for public ... purposes, and he could obviously not be made to do so." Ibid.
But the covenant here does not restrict use of the land solely to public use. Rather, it says that the land is to be used "for public purposes and to improve the same, ... and for such other purposes and uses as may be now or hereafter authorized by law [emphasis added]." The "other purposes and uses" need not be "public" purposes and uses. They must simply be purposes and uses "now or hereafter authorized by law."
The phrase "authorized by law" does not necessarily mean "expressly authorized by statute." Penrose v. Ventnor City, 80 N.J.L. 547, 549 (Sup.Ct. 1910). In the present context, we think purposes and uses "authorized by law" simply mean any purpose or use not prohibited by law. Therefore, the use of the *158 land by a private developer to build commercial shops and private condominium residences as part of the City's valid redevelopment plan would not violate the covenant, because this is a lawful use, i.e., one not prohibited by law. Of course, such a use would improve this blighted area, and "improvement" is one of the covenant's purposes.
Construction of the covenant as prohibiting the City from ever selling the land is contrary to the "firmly established ... policy of the law" against the imposition of restrictions upon the use of land, because they impair its "alienability." Hammett v. Rosensohn, 46 N.J. Super. 527, 535 (App.Div. 1957), aff'd. 26 N.J. 415 (1958). Neither law nor equity will aid one person to restrict another in the use of his land, "unless the right to restrict is made manifest and clear in the restrictive covenant." 46 N.J. Super. at 535-536. Deed covenants are "always to be strictly construed" so as not to restrict another in the use of land and thereby impair its alienability. Bruno v. Hanna, 63 N.J. Super. 282, 285 (App.Div. 1960). See also Caullett v. Stanley Stilwell & Sons, Inc., 67 N.J. Super. 111, 114-115 (App.Div. 1961) ("While restrictive covenants are to be construed realistically in the light of the circumstances under which they were created, ... counter considerations, favoring the free transferability of land, have produced the rule that incursions on the use of property will not be enforced unless their meaning is clear and free from doubt.... Thus, if the covenants or restrictions are vague or ambiguous, they should not be construed to impair the alienability of the subject property."); Tobin v. Paparone, 137 N.J. Super. 518, 529 (Law Div. 1975). The covenant in the 1903 deed is at least ambiguous on whether the City can ever sell the land. We will not construe it to impair the land's alienability.
Finally, in the 1903 deed there are no words indicating Bradley's intent to create a fee simple determinable or a fee simple subject to a condition subsequent. There are no words creating either a right of re-entry or a possibility of reverter. The consideration paid by the City for the conveyance, $100,000 *159 in 1903, may very well represent the land's 1903 market value. This suggests the conveyance of a fee simple absolute rather than a more limited interest. The mere statement in the 1903 deed of the purposes for which the land was conveyed, in and of itself, does not indicate the creation of any kind of limited estate in land. See generally, U.S. Trust Co. of New York v. State, 226 N.J. Super. 8, 13-16 (App.Div. 1988); Johnson v. City of Hackensack, 200 N.J. Super. 185, 190 (App.Div. 1985); Hagaman v. Bd. of Ed. of Tp. of Woodbridge, 117 N.J. Super. 446, 451-454 (App.Div. 1971); Restatement, Property § 44, comment m, at 129-130 and § 45, comments o and p, at 143-144 (1936); 2 Powell, Real Property, § 187 at 48-49 and § 188 at 58.3-58.6 (1988).
Because we conclude that the 1903 deed conveyed to the City an estate in fee simple absolute, the City can sell the land, pursuant to N.J.S.A. 40A:12-13, to the private developer as part of the City's redevelopment plan. See Englander v. West Orange Tp., 224 N.J. Super. 182, 190 (App.Div. 1988). N.J.S.A. 40A:12-13(c) says that any municipality may sell any real property not needed for public use, other than municipal lands or real property otherwise dedicated or restricted pursuant to law by private sale to a private developer by a municipality, when acting as a redevelopment agency pursuant to N.J.S.A. 40:55C-37 or a local housing authority pursuant to N.J.S.A. 55:14A-56 in order that it may be developed or redeveloped for the purposes specified in the redevelopment plan.
N.J.S.A. 40A:12-5 says that when a municipality has acquired real property "[s]ubject to lawful conditions, restrictions or limitations as to its use," and determines that the property "can no longer be used advantageously for the purposes for which the same were acquired by the ... municipality," it may "authorize the sale or exchange pursuant to [N.J.S.A. 40A:12-13] of the interest of the ... municipality in said real property." N.J.S.A. 40A:12-5 also says that, if the municipality determines that real property, "which has been acquired *160 by purchase ... for a nominal or no consideration ... subject to lawful conditions, restrictions or limitations as to its use, can no longer be used for the purposes for which acquired," the municipality "may offer or reconvey said property to the original grantor or his heirs for a similar or no consideration, prior to other disposition pursuant to [N.J.S.A. 40A:12-13] of this act." Otherwise, under N.J.S.A. 40A:12-13, the municipality may sell any such property, "other than ... real property otherwise dedicated or restricted pursuant to law."
In this context, we conclude that the phrase "real property otherwise dedicated or restricted pursuant to law" in N.J.S.A. 40A:12-13 means real property otherwise dedicated or restricted pursuant to a statute, not by deed language. To find otherwise renders meaningless the authority given a municipality in N.J.S.A. 40A:12-5, to sell "any real property" it has acquired "subject to lawful conditions, restrictions or limitations as to its use." See Cunningham & Tischler, "Dedication of Land in New Jersey," 15 Rutgers L.Rev. 377, 402 (1961) ("municipality may not authorize the use of dedicated land for private purposes which interfere with the public user; nor can it sell or lease dedicated land, absent enabling legislation"). N.J.S.A. 40A:12-5 and -13 serve as the enabling legislation in this instance.
In conclusion, with respect to both statutes, N.J.S.A. 40:55C-37 and N.J.S.A. 55:14A-56, municipal land may be sold to a private developer for redevelopment purposes. Judge Milberg properly ruled that the City's sale of the subject land to the private developer was "within the powers granted to the City ... through the 1903 Bradley deed," because redevelopment of a blighted municipal area by a private developer was a use "authorized by law." Any possibility of reverter or condition subsequent which may have existed was released in the deed of 1903. See ante at 149-150. We also conclude that such redevelopment is a public purpose that falls within the "catch-all" phrase at the end of the deed restriction. See N.J.S.A. 40:55C-2 and -30.

*161 III
We see no need in this case to decide the legal effects of the vacation of Ocean Avenue. There is no allegation or proof that plaintiff owns land adjoining the roadway. If he did, he might possibly be entitled to compensation for the vacation of the roadway, or even a fee title to the middle of the road, but that issue is not before us. If the City lacks clear title to the property that it is conveying to the private developer, any competing title claims should be asserted by the party with the property interest, not by the plaintiff.
We also reject plaintiff's contention that the City did not have the power or the right to vacate the dedication of Ocean Avenue. Even if a complete dedication of Ocean Avenue was effected by the 1903 deed, the City could not be required to maintain Ocean Avenue "forever" as a public street. As the City urges, a dedicator cannot limit the ability conferred upon every municipality by N.J.S.A. 40:67-1b to "vacate any public street, highway, lane or alley, or any part thereof." A dedicator cannot "retain a right to thwart the vacation [of a street] if the city authorities deem that course a public benefit"; to hold otherwise would give a dedicator the power to "prevent the city from relieving the public treasury of the unnecessary burden of caring for useless streets." Sherwood v. City of Paterson, 88 N.J.L. 456, 458 (Sup.Ct. 1915), aff'd o.b. 88 N.J.L. 738 (E. & A. 1916).

IV
Plaintiff next contends that the August 24, 1988 ordinance vacating the subject portion of Ocean Avenue and amending the official map of the city was illegal because it was adopted in violation of N.J.S.A. 40:55D-26a and -32 of the Municipal Land Use Law, which require prior reference of such an ordinance to the planning board. We disagree.
Judge Milberg noted that the "closing of Ocean Avenue between First and Fourth Avenue" was "clearly spelled out" as *162 part of the "main focus" of the City's waterfront development plan, which it adopted in November 1984. He also noted that in October 1984, when the Board reviewed and recommended adoption of this plan, it was "well aware" that the plan's "major focus" was the closing of portions of Ocean Avenue. Therefore, he saw "no reason why the City Council should have referred the final [vacation] ordinance to the Planning Board," and he concluded that this ordinance was not adopted "in violation of the Municipal Land Use Law." We agree.
As the Board said in its October 11, 1988 resolution, it had "previously reviewed and recommended adoption of the Waterfront Redevelopment Plan," which had a fundamental element requiring "creation of large development parcels by vacation of portions of Ocean Avenue," including the "relevant portion of Ocean Avenue between Third and Fourth Avenue." Because it had already reviewed and approved the street vacations in the plan and the changes to the official map to reflect those vacations, by its October 11, 1988 resolution the Board simply reaffirmed its prior approval.
We also note that if a municipal body or agency has the power to act, but has failed to follow exactly the proper procedures to exercise that power, its irregular, but not ultra vires, action may be subsequently ratified. See De Muro v. Martini, 1 N.J. 516, 522 (1949); Edgewater Park v. Edgewater Park Housing Authl, 187 N.J. Super. 588, 602 (Law Div. 1982); Houman v. Mayor & Coun. Bor. Pompton Lakes, 155 N.J. Super. 129, 160 (Law Div. 1977). Therefore, assuming that defendant violated the Municipal Land Use Law by adopting the August 24, 1988 ordinance without a prior reference to the Board, on October 11, 1988 the Board adequately ratified defendant's irregular action.
Affirmed.