MENYUK, J.T.C.
Plaintiffs Hainesport Township and Mount Laurel Township (collectively, the “Townships”) challenge orders of the Burlington County Board of Taxation (the “Board”) * directing the Townships to implement complete revaluations by September 30, 2009 to be effective for the 2010 tax year on the ground that the orders are invalid and void because the Board acted without a quorum. This issue originally came before the court on motions by both Townships to amend the respective complaints to add a count alleging *141 that there were three vacancies on the Board that had an authorized membership of five, that only the remaining two members of the Board acted on the revaluation orders, and that the Board’s actions were therefore invalid. The Townships also moved for summary judgment on the proposed new count of the complaint.
Following the grant of the motions to amend and denial of the motions for summary judgment for reasons originally set forth in a letter opinion dated April 1, 2009, Mount Laurel Township moved for reconsideration upon learning in a newspaper article that the Ocean County Board of Taxation had only one remaining member out of an authorized membership of seven, and had been advised by the Office of the Attorney General that the single member could convene meetings and administer board affairs, but that he was prohibited from entering judgments on local property tax appeals. In a bench opinion delivered on May 15, that motion was also denied.[1]
The facts are as follows. By separate orders dated May 18, 2008, the Board directed Hainesport Township and Mount Laurel Township and their respective assessors to conduct complete revaluations. Both orders recited that the Board was acting pursuant to its statutory duties under N.J.S.A. 54:4-47 and N.J.S.A. 54:3-13. Each order also set forth certain factual findings made by the Board with respect to each Township’s ratio of assessed to true valuation and general coefficient of deviation. Finally, both orders concluded that the statistical pattern evidenced by the statistical findings reflected an assessment pattern that lacked uniformity and did not conform to the assessment standard of 100% of true value established by the Board.
Both orders were signed on behalf of the Board by Eileen R. Carlos, President, and Joseph Andl, Vice President. Both orders were also approved and signed by the Director, Division of Taxation (“Director”). The record does not disclose the date on which the Director approved the orders, but the orders as so *142 approved were served on the respective Townships together with a letter dated June 18, 2008.
Hainesport Township filed its complaint with the Tax Court on August 1, 2008, and Mount Laurel Township filed its complaint on August 6, 2008. The complaints alleged that the statistics cited by the Board in each order did not warrant revaluation, and that in any event, the time provided by the orders in which to conduct a revaluation was unrealistic if not impossible. The Townships also alleged that the current market with its falling real estate prices was not an appropriate time to conduct a revaluation. Each complaint asked the court to vacate the order of revaluation. The Board filed answers in October 2008.
On January 9, 2009, the Townships filed motions to amend the complaints and for summary judgment. The initial papers submitted by the Townships in support of their motions contained sparse facts. Each Township submitted the certification of its respective attorney appending copies of the Board’s revaluation order, with the attorney noting that the order had been signed by only two commissioners.
In opposition to the Townships’ motions, the Board submitted the certifications of Margaret M. Nuzzo, the Burlington County Tax Administrator, who stated that the Board is authorized to have five members, and had five members in 2006. Since then, one member (presumably Ms. Nuzzo herself) resigned to become the County Tax Administrator, and two other members retired as of January 1, 2008. She also stated that only the Governor is authorized to nominate county board members, who are appointed with the advice and consent of the Senate. See N.J.S.A. 54:3-2. No additional appointments had been made to the Board, leaving the Board with only two members at the time the motions were heard.[2]
*143 Ms. Nuzzo stated that the Attorney General issued informal advice to the Board in 2008, advising it that the Board could function with two members. The Board has relied on this advice since 2008 to perform its statutory duties by the required deadlines. Finally, Ms. Nuzzo certified that the Board has ordered several other municipalities to undertake revaluations over the past few years and that, in addition to the two orders challenged by these motions, the Board ordered four other revaluations in 2008. There are nine revaluations currently in progress for implementation in 2010 and one for 2011.
The Board also submitted the certifications of Patricia Wright, the Assistant Director of the Division of Taxation (“Division”) for Property Administration, who stated that she has had oversight responsibilities for revaluation orders since 2000, and was responsible for overseeing the processing of the revaluation orders from the Board during 2008. Ms. Wright stated that when the Board submitted its orders to the Division in May 2008, she had the information prepared for the Director to evaluate whether or not to approve the orders. The Division investigated, reviewed and analyzed the pertinent statistics from statistical fact sheets developed by the Division, one specifically for Hainesport Township and the other specifically for Mount Laurel Township. According to Ms. Wright, the data on the whole showed that each Township lacked uniformity and did not conform to the assessment standard of 100% of true value, thereby supporting the decisions of the Board to order revaluations for both Townships. The Director reviewed that data, agreed that the revaluations were justified and approved the Board’s orders.
The Townships initially relied upon N.J.S.A. 54:3-2, which, as amended by L. 2005, c. 44, § 1 provides that the Board is to be composed of five members,[3] and further provides that, “at no time shall more than three members belong to the same political party.” They also asserted that by statute, N.J.S.A. 54:3-25, a quorum consists of three members. That statute provides:
*144 A majority of the members of the board shall constitute a quorum for the transaction of business, and an adjustment agreed to by such majority shall be taken to be the action of the board.
[N.J.S.A. 54:3-25],
The Townships contended that the quorum statute should be read so that a majority of the authorized membership of the Board, including positions currently vacant, constitutes a quorum. In support of this reading, they relied on the following language contained in In re Appeal of Monroe Township, 16 N. J.Tax 261 (Tax 1996):
During the hearing process counsel for Monroe moved to have three of the five county tax commissioners recuse themselves to avoid an alleged appearance of impropriety. The three commissioners acquiesced in Monroe’s request leaving only two commissioners to determine the 2,443 appeals. Since N.J.S.A. 54:3-25 requires a quorum of three commissioners to make determinations, the county tax board invoked a rule of necessity to call back one commissioner.
[Id. at 266 (emphasis added) ].
In response, the Board relied on Formal Opinion No. 3 of the Attorney General, issued on May 7, 1991 (“Formal Op. No. 3”), which responded to an inquiry as to how a quorum of members of a public body is determined when vacancies exist in the agency’s membership. As noted by the Board, courts give weight to the Attorney General’s opinion where an agency bases its statutory interpretation on that opinion. Peper v. Princeton University Board of Trustees, 77 N.J. 55, 70, 389 A.2d 465 (1978).
Formal Op. No. 3 analyzed the existing case law, and concluded that in the absence of statutory language to the contrary, the New Jersey common law rule applied: that is, a majority of the current members of a board or agency, constitutes a quorum. See Edgewater Park Township Committee v. Edgewater Park Housing Authority, 187 N.J.Super. 588, 597, 455 A.2d 575 (Law Div.1982); Prezlak v. Padrone, 67 N.J.Super. 95, 102, 169 A.2d 852 (Law Div.1961); Ross v. Miller, 115 N.J.L. 61, 63, 178 A 771 (Sup.Ct. 1935). The opinion also stated:
It is appropriate to add a final comment on this point. It is possible to hypothesize a situation in which the number of vacancies in an agency’s membership might become so large, and the number of remaining members so small, that a quorum comprised of a majority of current members would not constitute a fair representation of the agency. We recognize in this respect that “[t]he requirement of a quorum is a protection against totally unrepresentative action in the name of the *145 body by an unduly small number of persons.” Robert’s Rules of Order (1981), p. 16. While in extreme emergencies there might be resort to other legal doctrines such as the “rule of necessity” which could enable a public body to act in rare cases where less than an authorized quorum is available but where a public exigency requires governmental action, we must be mindful of the dictum in Ross v. Miller, supra, that “[i]t would clearly do violence to the legislative purpose and policy to hold that if the membership were ... reduced to one, the surviving member could” act alone. 115 N.J.L. at 66, 178 A. 771. This possibility is lessened by the provisions usually included in agency enabling acts by which a member whose term has expired continues in office until a successor is appointed and takes office. In any event, the issue must be addressed by considering the specific factual circumstances in which the issue arises.
[Formal Op. No. 3 (footnote omitted) (quoting Ross v. Miller, 115 N.J.L. 61, 66, 178 A. 771 (Sup. Ct. 1935))].
The Board alternatively argued that because the Director must approve orders of the Board, N.J.S.A. 54:3-16, the order of the Board has been ratified by the Director. Therefore, regardless of any procedural defects that may have occurred in the entry of the Board’s order, it contends that this court has the jurisdiction to reach the merits of the revaluation order, presumably in its capacity to review actions of the Director. N.J.S.A 2B:13-2(a)(l).
The Townships responded with a legal opinion from the New Jersey Legislature’s Office of Legislative Services[4] that specifically responded to an inquiry regarding the present status of the Board. The opinion was based on the additional factual premise that the remaining two members of the Board belong to the same political party,[5] and concluded that, while the Board could continue to perform administrative functions, it could not conduct any business requiring a vote. The opinion was based primarily on the language of N.J.S.A. 54:3-2, which provides that “[a]t no time shall more than three of the members belong to the same political party.” The opinion cited a decision of this court, Essex County Board of Taxation v. Township of Caldwell, 19 N. J.Tax 587, 592 (Tax 2001), aff'd, 21 N.J.Tax 188 (App.Div.), certif. denied 176 N.J. 426, 824 A.2d 156 (2003), which concluded from that statutory *146 language, that in setting forth the composition of the county boards of taxation, the Legislature attempted to balance competing political interests while acknowledging that political considerations would not be completely absent.
Amendments to complaints in the Tax Court are controlled by R. 8:3-8, which provides that prior to the pretrial conference or, if there is no pretrial conference, prior to receipt of notice of the first date fixed for trial, a party may, upon notice to all parties, amend its pleadings. R. 8:3-8(a). Unless there is an objection to the amendment (in which case the court may, but need not, conduct a hearing), the amendment is accepted. Ibid. Thereafter, amendments must be made on motion for good cause shown. R. 8:3-8(a). No date had yet been fixed for the pretrial conference or the trial in the Hainesport matter because counsel had advised the court and counsel for the Board that Hainesport would be making this motion. A trial notice was sent for the Mount Laurel matter, although both the court and counsel for the Board were aware of the probability that both Townships would be making similar motions. The trial notice was therefore premature. The Board did not indicate any basis for rejecting the amendment to the complaints, such as prejudice due to the passage of time, although obviously it maintained that the orders for revaluation were valid. The motions to amend the complaints to add a count challenging the order on the ground that the Board acted without a quorum were therefore granted.
The Townships’ motions for summary judgment were made pursuant to R. 4:46, which provides that summary judgment should be granted when “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(c). “By its plain language, Rule 4:46-2 dictates that a court should deny a summary judgment motion only where the party opposing the motion has come forward with evidence that creates a ‘genuine issue as to any material fact challenged.’ ” Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 529, 666 A.2d 146 (1995). There were no *147 factual disputes raised by the initial motions for summary judgment with respect to the new count of the complaints, and the motions were, therefore, appropriately disposed of by way of summary judgment.
On the initial motions, I concluded that the available New Jersey case law has consistently indicated that the language of the Board’s quorum statute, N.J.S.A. 54:3-25, does not depart from the common law rule that a quorum of the Board is a majority of its sitting members; that is, vacancies are not taken into account in determining whether a quorum exists. In this case, there were two sitting members of the Board at the time the revaluation orders were entered, and both voted to order the revaluations. Therefore, the orders were authorized by a majority of a quorum of the Board and are valid.
In Ross v. Miller, supra, the court stated the rule as follows: “At common law, a majority of all the members of a municipal governing body constituted a quorum; and in the event of a vacancy a quorum consisted of a majority of the remaining members.” 115 N.J.L. at 63, 178 A. 771. The Ross court concluded, however, that where the statute in question provided that a majority of all the members of the municipal council constituted a quorum, ibid., the statute evidenced a legislative intent to modify the common law rule Id. at 64, 178 A. 771. The court emphasized that the applicable rule of statutory construction is that the Legislature is presumed to be aware of judicial construction of its enactments and will be deemed to have used words in the sense that have been ascribed to them. Ibid. See State v. Smith, 197 N.J. 325, 335, 963 A.2d 281 (2009) (to the same effect).
In Prezlak v. Padrone, supra, 67 N.J.Super. at 102, 169 A.2d 852, the court acknowledged the common law rule as set forth in Ross v. Miller, but found it inapplicable where the applicable quorum statute provided that a majority of the whole number of members of the city council constituted a quorum. Such statutory language had consistently been construed by the courts as meaning a majority of all the authorized seats, whether filled or not. Id. at 100,169 A.2d 852 (citing Ross v. Miller, supra).
*148 Edgewater Park Township Committee v. Edgewater Park Housing Authority, supra, concerned the authority to act of a local housing authority, where the statute in effect at the time the authority was created required a board of seven, five to be appointed by the municipal governing body, one by the mayor and one member by the Director of the Public Housing and Development Authority within the New Jersey Department of Environmental Protection. 187 N.J.Super. at 591-92, 455 A.2d 575. No member had been appointed by the director of the state agency. Ibid. The court recognized the common law rule, id. at 597, 455 A.2d 575, but held it inapplicable because the statute authorizing the creation of local housing authorities had an express quorum provision that stated in pertinent part: “[f]our members shall constitute a quorum of the authority ... Action may be taken by the authority upon the affirmative vote of the majority, but not less than three of the commissioners present.” Ibid. The court concluded that the existence of a vacancy in the membership of the housing authority board did not affect the ability of the authority to act as long as the statutory quorum was present. Ibid.
The Townships’ reliance upon In re Appeal of Monroe Township, supra, 16 N.J.Tax at 266, was not persuasive. The constitution of a quorum of the county board of taxation was not an issue in that case. The court was simply recounting how the case arrived in the Tax Court.
The statute in issue here, N.J.S.A. 54:3-25, defines a quorum as a majority of the members of the board. I concluded from the foregoing review of the relevant eases that this statutory language is not indicative of a legislative intent to depart from the common law rule that a majority of the current membership, without counting vacancies, constitutes a quorum. Since both members of the current membership were present for the actions in dispute here, I found that there was a quorum when the Board considered whether the Townships should be directed to conduct revaluations, and that a majority of the quorum authorized the revaluations. The contested orders were, therefore, validly entered.
*149 The Townships emphasized that the members who considered the orders of revaluation were both members of the same political party. N.J.S.A. 54:3-2 provides that in Burlington County, for which a five member board is authorized, “at no time shall more than three of the members belong to the same political party.” As constituted as of May 19, 2008, when the Board entered its orders, the two person membership did not violate that provision. Fewer than three members belonged to the same political party.
The Townships nevertheless contended that there was a potential for abuse and that the composition of the Board could be manipulated by the party in power if the Governor failed to appoint and the Legislature failed to pass upon new members of the other political party. No such abuse was alleged in this case. The Townships argued, essentially, that the partisan composition of the Board is an essential element that must be considered when construing the quorum statute, citing Essex County Board of Taxation v. Township of Caldwell, supra, 19 N.J.Tax at 592. They also relied upon the language of a 2005 amendment to N.J.S.A. 54:3-2, L. 2005, c. 44, § 1, which increased the membership of county boards of taxation from three to five (in the case of the Burlington County Board, and from five to seven in the case of some larger counties). The Townships asserted that this amendment was intended to enhance the degree of political partisanship, citing the following statement to A. 2340, after floor amendments were passed:
The bill, as amended, would ensure that no more than three of the members of a five-member board and that no more than four members of a seven-member board would belong to the same political party.
[Statement to A. 2340, with Assembly Floor Amendments (Jan. 24, 2005) ].
The language does not have the significance that the Townships attributed to it. N.J.S.A. 54:3-2 had previously provided that no more than two members (in the case of three member boards) or three members (in the case of five member boards) were to be of the same political party. The bill finally enacted as L. 2005, c. 44 was actually the Senate bill, S. 1086, which was substituted for A. 2340. Both the Assembly and Senate bills, as introduced, intend *150 ed only to increase from three to five the membership of counties with a population of more than 200,000. Previously, only counties with a population of more than 510,000 were permitted a board of five members. However, because the statute already provided for the partisan composition of a five member board, there was no need to amend that language. The Senate bill was thereafter amended to increase the membership of all boards of taxation: formerly three member boards were to become five member boards and formerly five member boards were to become seven member boards. Senate Community and Urban Affairs Committee, Statement with Committee Amendments to S. 1086, (June 21, 2004). At the same time, the Committee amended S. 1086 to provide that a five member board would have no more than three members of the same party and that seven member boards would have no more than four members of the same party. As amended, S. 1086 was passed by the Senate on June 24, 2004. The Assembly made the same amendments to A. 2340 on the floor, on January 24, 2005, and adopted the statement to which the Townships refer. Clearly, however, the entire statement indicates that the purpose of the legislation was to increase the membership of all boards, with the partisan balance to remain as it had been prior to amendment. S. 1086 was subsequently substituted for A. 2340 and passed by the Assembly on February 24, 2005.
Moreover, as noted earlier, the Legislature is presumed to know and be aware of the judicial construction placed on statutory language. The language at issue here has been consistently construed by the courts of this State since at least the decision in Ross v. Miller, supra. The decisions plainly hold that courts will construe language defining a quorum as a majority of a public body to mean a majority of the current membership without counting vacancies, unless the legislative language clearly indicates the intent to depart from the common law rule by providing, for example, for a quorum consisting of a “majority of all the members,” Ross v. Miller, supra, 115 N.J.L. at 64, 178 A. 771, or a “majority of the whole,” Prezlak v. Padrone, supra, 67 N.J.Super. at 100, 169 A.2d 852, or a specific number, such as four. Edge- *151 water Park Twp. Comm. v. Edgewater Park Housing Auth., supra,, 187 N.J.Super. at 597, 455 A.2d 575.
Had the Legislature intended to impose on county boards of taxation something other than the common law rule for a quorum, it had a prime opportunity to do so when it changed the membership of the boards in 2005, but it did not. See, e.g., Johnson v. Scaccetti, 192 N.J. 256, 277, 927 A.2d 1269 (N.J.2007) (“the Legislature knows how to express its disagreement with case law by amending a statute if it believes a court has misconstrued its intent”).
Obviously, it would be preferable if the Governor promptly made nominations to fill vacancies in county boards of taxation in accordance with the directions of the Legislature as to partisan composition, and if the Senate acted promptly upon those nominations. The point, however, is that the Legislature has not mandated that both parties be represented after one or more vacancies has occurred, beyond requiring that no more than three members of a five member board may be of the same party.[6] N.J.S.A. 54:3-2. It has not inserted partisan requirements into the quorum statute or indicated its intent to depart from the common law quorum rule.
Indeed, as recognized in the opinion of the Office of Legislative Services, the design of the local property taxation statutes would be substantially disrupted if the Board is unable to act until the vacancies are filled. In 2008, subsequent to the occurrence of the vacancies noted here, the Board heard and decided an unknown number of appeals from local property assessments pursuant to N.J.S.A. 54:3-22; it performed its statutory duty to promulgate an equalization table setting forth the general ratio of assessed to trae value for property in each taxing district in the county, N.J.S.A. 54:3-17, -18, N.J.S.A. 54:4-47, without which taxing rates for each municipality cannot be established. N.J.S.A. 54:4-52. Without a tax rate, a county board of taxation is unable to inform *152 the municipal tax collector of the amount of taxes to be collected from each taxpayer. N.J.S.A. 54:4-55. The Board’s revaluation orders were entered pursuant to the Board’s statutory duty to “secure the taxation of all property in the county at its taxable value as prescribed by law, in order that all property, except as shall be exempt by law, shall bear its fully and just share of taxes.” N.J.S.A. 54:3-13. That duty is of constitutional dimensions. N.J. Const. art. VIII, § 1, ¶ l(a)(“All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value ...”). Although only the orders directing the revaluations were in issue here, the Office of Legislative Services opined that all such actions taken by the Board that were more than merely administrative (such as receiving and filing forms) since the January 2008 resignations were void ab initio or voidable.
Under the Townships’ theory, unless the vacancies were filled immediately, the Board would be unable to hear any appeals for 2009. Because the Tax Court may hear direct appeals only of property assessed in excess of $750,000, most homeowners and many small business owners would effectively be deprived of the right to have appeals of their 2009 property tax assessments heard at all.[7] Even if the time in which the Board can hear appeals could be extended, as suggested in the opinion of the Office of Legislative Services, the equalization functions must be performed promptly in order to permit tax bills to go out and municipalities to collect taxes. As the Board contended, it is unlikely that the Legislature intended that the entire system of local property taxation be paralyzed while waiting for vacancies in a county board of taxation to be filled.
The Board also maintained that its orders were ratified by the Director and that this court was therefore able to proceed to determine whether the substance of the orders is unreasonable or *153 arbitrary in its capacity to review determinations of the Director. It based this argument on N.J.S.A. 54:3-16, which provides that no rule or order of a county board of taxation is valid until approved by the Director. The Board relied on case law holding that where an agency has the statutory authority to take an action but the action taken is procedurally defective, the procedural flaws or deficiencies may be cured retroactively. It cites In re Amendments to Solid Waste Management Plan, 133 N.J. 206, 222-23, 627 A.2d 614 (1993) (Department of Environmental Protection (“DEP”) and Board of Public Utilities (“BPU”) may retroactively adopt curative regulatory measures to validate amendment to Hudson County waste disposal plan); Frank A. Greek & Sons, Inc. v. Township of South Brunswick, 257 N.J.Super. 94, 105-06, 607 A.2d 1359 (App.Div.), certif. denied, 130 N.J. 602, 617 A.2d 1223 (1992) (Council on Affordable Housing (“COAH”) could promulgate regulations retrospectively curing statutorily authorized municipal action); Ferreira v. City of Asbury Park, 237 N.J.Super. 142, 162, 567 A.2d 233 (App.Div.1989), certif. denied, 121 N.J. 627, 583 A.2d 324 (1990) (where it was alleged that a municipal ordinance was invalid because it had not been referred to the planning board, any defect was cured by subsequent approval of the ordinance by the planning board).
If the Board’s order was procedurally defective because a quorum must consist of at least three members (a majority of the authorized membership of five), the Board could not itself ratify the orders until after the appropriate number of members were appointed. I also concluded that the approval of the orders by the Director did not ratify the Board’s action, although the Director may herself order the revaluations if certain actions required by statute are taken.
Revaluations are conducted under the general supervision of the Director. She is directed by statute to establish standards to be used in the valuation and revaluation of real property for purposes of assessment. N.J.S.A. 54:1-35.35. The Director has promulgated such standards at N.J.A.C. 18:12A-1.14, cited by the Board in the orders contested here as the basis of their determinations. The municipality must obtain the approval of the Director with *154 respect to any contract it proposes to enter into for the revaluation of real property, N.J.S.A. 54:1-35.36, a requirement reflected in the Board’s orders. Most significantly, the Director has independent authority to direct a reassessment.[8] N.J.S.A. 54:1-26.
Ms. Wright of the Division certified that the Director undertook an independent review of the statistical information regarding the statistics pertinent to whether a revaluation should be ordered. However, the Director is required to give notice of any investigation preceding a reassessment undertaken by her and to provide an opportunity for the taxpayers and municipal officers to be heard. N.J.S.A. 54:1-28. The Director may, if she desires, take the actions required by statute, including providing notice and an opportunity for a public hearing and enter her own order. In other words, there is a statutory procedure whereby the Director can take independent action, but there is no provision in the statute or in the Director’s regulations for ratification of an irregular action by the Board.
The cases cited by the Board are not directly apposite. In re Amendments to Solid Waste Management Plan, supra, 133 N.J. at 222, 627 A.2d 614, concerned whether the DEP and BPU could remedy their own procedural irregularities, and not the procedural irregularities of another agency.
The issue in Frank A. Greek & Sons, Inc. v. South Brunswick Township, supra, 257 N.J.Super. at 101, 607 A.2d 1359, was whether COAH had the potential power to promulgate regulations upon which municipalities could rely in order to validate their prior actions in collecting mandatory builders’ fees, where COAH had announced its intention to promulgate such rules but had not actually done so. The Director’s rule-making power was not at issue here.
Finally, in Ferreira v. Asbury Park, supra, 237 N.J.Super. at 147, 567 A.2d 233, it was alleged that a municipality had taken *155 action contrary to the Municipal Land Use Law, because it had not referred a proposed ordinance to the municipal planning board. The planning board later approved the contents of the ordinance. Id. at 162, 567 A.2d 233. In so doing, the planning board retroactively cured the defect in the municipal action. In the present case, the Director could not ratify the Board’s action by correcting the defect — she could not retroactively create a quorum if none existed.
In sum, I found that the Board’s orders were validly entered upon the vote of a majority of a quorum of the Board. Accordingly, I granted the Townships’ motions to amend the complaints to add an additional count alleging the invalidity of the Board’s actions for failure to have a quorum, but denied the motions for summary judgment.
Mount Laurel Township’s motion for reconsideration followed.[9] The motion contended that the newspaper article describing the situation of the Ocean County Board of Taxation was “newly discovered evidence,” warranting reconsideration. Mount Laurel Township argued that the advice given by the Office of the Attorney General to the Board, as related in Ms. Nuzzo’s certification, conflicted with the advice given by the Attorney General to the Ocean County Board of Taxation, and contended that the court’s initial decision in this matter should be reconsidered and reversed under the doctrine of judicial estoppel.
Mount Laurel asserted that both boards were represented by the Attorney General, and that the Board “must be imputed with knowledge of the advice given by the State Attorney General’s Office to the Ocean County Board of Taxation” and that the Board had misled the court in its original response to the summary judgment motion. Mount Laurel also argued, in effect, that for purposes of the quorum statute, N.J.S.A. 54:3-25, there was no difference between three vacancies on a five-member board and six vacancies on a seven-member board, and that, consistent with *156 the Attorney General’s advice to the Ocean County Board of Taxation, the court should find that the revaluation orders issued by the Board were entered without a quorum present.
Rule 4:49-2 governs motions for rehearing or reconsideration seeking to alter or amend a judgment. “[A] motion to alter and amend under R. 4:49-2 includes a motion to vacate.” Baumann v. Marinaro, 95 N.J. 380, 390, 471 A.2d 395 (1984).
Reconsideration is a matter within the sound discretion of the Court, to be exercised in the interest of justice. A litigant should not seek reconsideration merely because of dissatisfaction with a decision of the Court. Rather, the preferred course to be followed when one is disappointed with a judicial determination is to seek relief by means of either a motion for leave to appeal or, if the Order is final, by a notice of appeal. Reconsideration should be utilized only for those cases which fall into that narrow corridor in which either 1) the Court has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the Court either did not consider, or failed to appreciate the significance of probative, competent evidence.
[D’Atria v. D’Atria, 242 N.J.Super. 392, 401, 576 A.2d 957 (Ch.Div.1990) (citations omitted) ].
The new evidence relied upon by Mount Laurel is not probative of the issue decided by the court on the initial motions, which is whether two members of a five member county board of taxation constituted a quorum for purposes of a revaluation order. The newspaper article cited related to a seven member board with a single member. Consequently, it is questionable whether the motion sets forth a basis for reconsideration. Nonetheless, I have considered the issues raised by the motion.
Mount Laurel relied on the principle of judicial estoppel, apparently because the Attorney General advised one client (that is, the one remaining member of the seven member Ocean County Board of Taxation) that it could not act, whereas it advised another client (the two remaining members of the Burlington County Board of Taxation), that it could. Judicial estoppel has been described as follows:
“The doctrine [of judicial estoppel] prevents litigants from 'playing fast and loose’ with, or otherwise manipulating the judicial process.” “[Judicial estoppel] ‘bars a party to a legal proceeding from arguing a position inconsistent with one previously asserted.’ ” “Judicial estoppel, however, is an ‘extraordinary remedy that courts invoke only when a party’s inconsistent behavior will otherwise result in a miscarriage of justice.’ ” A threat to the integrity of the judicial system sufficient *157 to invoke the judicial estoppel doctrine only arises when a party advocates a position contrary to a position it successfully asserted in the same or a prior proceeding____ ‘TTlo be estopped [a party must] have convinced the court to accept its position in the earlier litigation. A party is not bound to a position it unsuccessfully maintained....”
[City of Atlantic City v. California Ave. Ventures, LLC, 21 N.J.Tax 511, 516, 517 (Tax 2004) (citations omitted), aff'd, 23 N.J.Tax 62 (App.Div.2006) ].
This is not, then, judicial estoppel. The Burlington County Board of Taxation has never asserted a contrary position in any other litigation. The Ocean County Board of Taxation has never asserted any position in litigation before this court regarding the existence of a quorum. Moreover, the Attorney General and her deputies have to be distinguished from the clients that they represent, and the advice the Attorney General gives one client is dependent upon the facts and the relevant law in each situation where that office is asked for advice.
Further, as pointed out by the Board on this motion, the advice given the Ocean County Board is not contrary to the advice given to it and was signaled in Formal Op. No. 3 of the Attorney General dated May 7, 1991. That opinion concluded, as I did in my decision on the original motions, that where a statute defines a quorum for meetings of a public body as a majority of the members, a quorum means a majority of the actual current membership after subtracting any vacancies. As noted above, Formal Op. No. 3 also advised the exercise of caution on the issue of the existence of a quorum where there remained but a single member of the board of a public entity, concluding that “the issue must be addressed by considering the specific factual circumstances in which the issue arises.”
The quorum statute in issue here, and also applicable to the Ocean County Board of Taxation, is N.J.S.A. 54:3-25, which provides that a majority of the members of the board shall constitute a quorum. That language has been consistently construed by the courts of this state as setting forth the common law rule that a majority of the existing membership constitutes a quorum. Whether one person constitutes a majority where all six of the remaining positions are vacant, the situation that existed in Ocean County at the time the Attorney General’s office rendered *158 its advice to that Board according to the newspaper article, is a debatable question. Had those been the facts before me here, I might have decided the motions differently. Those were not the facts. The motion for reconsideration was therefore denied.

 This opinion is substantially the same as the April 1, 2009 letter opinion as revised to incorporate the May 15, 2009 bench opinion.

 Subsequent to the decision of these motions, the Governor nominated five persons to be members of the Board, including Mr. Andl and Ms. Carlos. Those nominations were approved by the Senate on June 25, 2009. See Office of Legislative Services, New Jersey Legislative Digest (June 25, 2009), http://www. njleg.state.nj.us/legislativepub/digest/062509.pdf (last visited Aug. 3, 2009).

 Counties with populations of more than 510,000 are authorized to have seven members.

 The opinion is dated January 28, 2009, or after the filing of the motions in this case.

 At oral argument, the Board did not dispute the truth of that statement.

 Even if I had accepted the Townships' argument that a quorum of the Board must consist of a majority of the authorized membership of five, a quorum would consist of three members, all of whom are permitted to be of the same party.

 As stated in n. 2, supra, the vacancies have been filled since the rulings in this case were originally issued.

 The terms reassessment and revaluation are not defined by statute. The term reassessment used in N.J.S.A. 54:1-26 appears to have the same meaning as the term revaluation as used in N.J.S.A. 54:1-35.36.

 Hainesport Township did not file its own motion, but submitted a letter "joining" in Mt. Laurel's motion.